Brassard, J.
Introduction
Plaintiff seeks judicial review, pursuant to M.G.L.A. c. 6, §178M and c. 30A, §14, of the decision by the Sex Offender Registry Board (“the Board”) to classify him as a level three sex offender. The decision was rendered after an evidentiary hearing conducted in accordance with M.G.L.A. c. 6, §178L(l)(c) and constitutes the final decision of the agency. After a hearing and careful review of the parties’ cross motions for judgment on the pleadings, the decision of the Board is affirmed.
This court’s review “shall be confined to the record” created during the evidentiary hearing. M.G.L.A. c. 30A, §14(4) and (5). Unless the decision of the hearing examiner was in violation of constitutional provisions, in excess of the statutory or jurisdictional authority of the Board, based upon an error of law, made upon unlawful procedure, unsupported by substantial evidence, unwarranted by the facts found by the court on the record, arbitrary or capricious, an abuse of discretion or otherwise not in accordance with law, this court may not set aside or modify the Board’s decision. §14(7). The record in this case consists of the transcript of the evidentiary hearing, documentary evidence submitted to the Board by both parties, including police and doctor reports, and the agency’s written decision.
Chapter 6, §178K(1) directs the Board to “promulgate guidelines for determining the level of risk of reoffense and the degree of dangerousness posed to the public . . . , apply [these] guidelines to assess the risk level of particular offenders . . . , and conduct hearings as provided in §178(L).” When the Board receives information about a particular sex offender over which it has jurisdiction, it must notify that individual of his right to submit documentary evidence relative to his risk of re-offense and the degree of dangerousness he poses to the public, and his duty to register under §178E. §178(L)(l)(c). The statute also provides that the Board, for an indigent offender, “may grant payment of fees for an expert witness in any case where the Board in its classification proceedings intends to rely on the testimony or report of an expert witness prepared specifically for the purposes of the classification proceeding.” Id. In reaching a classification recommendation, the Board must consider the offender’s criminal history, the circumstances of the sex offense, the presence or absence of physical harm caused by the offense, whether the offense involved consensual conduct between adults, and other factors which tend to demonstrate whether or not the offender is likely to re-offend. 803 C.M.R. §1.06(3).
After review of any documentation submitted by the sex offender, the Board must notify the individual of its recommended classification and of the individual’s right to request an evidentiary hearing, at which he has the right to counsel.[1] Id. Section 178(L)(2) provides that when an offender requests a hearing pursuant to subsection (1), “the [chairperson of the Board] may appoint a member, a panel of three Board members, or a hearing officer to conduct the hearing, according to the standard rules of adjudicatory procedure or other rules which the Board may promulgate, and to determine by a preponderance of the evidence such sex offender’s duty to register and final classification.” Under 803 C.M.R. §1.03, a hearing examiner may be an individual employed or contracted by the Board.[2] During the hearing, which is conducted de novo, “the rules of evidence observed by courts shall not apply . . .” §§1.10 and 1.19(1). “Evidence maybe admitted and given probative effect only if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs.” §1.19. At the hearing, the Board has the burden of proving by a preponderance of the evidence that the offender has a duty to register at a particular level. C. 6, §178L(c)(2).
DISCUSSION
Plaintiff was charged with his first sexual offense in 1991. He pled guilty to Indecent Assault and Battery on a Child under 14 and served three months committed, with the remainder of his sentence suspended with probation. The victim was plaintiffs niece, who was five years old at the time. The hearing examiner found that, although plaintiff now denies having committed this crime, his guilty plea, along with the sufficient detail presented by plaintiffs niece in the police reports and lack of discemable motive for her to fabricate such allegations, shows by a preponderance of the evidence that plaintiff had indeed committed the crime.[3]
In 2002, plaintiff pled guilty to one count of Criminal Harassment and received five years probation. He also received pre-trial probation for three counts of Accosting and Annoying a Person of the Opposite Sex. These charges involved plaintiffs interaction with four girls, aged seven to ten at the time. The girls reported that plaintiff waited around their bus stop and apartment building, and asked them if he could smell their feet.
In connection with these charges, Dr. Lundrigan was asked to prepare a Sex Offender Specific Evaluation of plaintiff by plaintiffs probation officer. While on probation, plaintiff has also been undergoing therapy for general family and work-related problems during this time with Dr. Hagenbuch. Plaintiff has admitted he has a foot fetish to both doctors.
As grounds for his appeal to this court, plaintiff claims that the Board failed to meet its burden of proof because it did not offer any specific expert evidence to support its decision that plaintiff should be classified as a level three sex offender. Plaintiff also argues that Dr. Lundrigan’s sex offender evaluation was admitted *502 in error because of its unreliability, and that plaintiff was denied his constitutional right to confront Dr. Lundrigan, his accuser. Further, plaintiff argues that the hearing examiner erred in giving more weight to Dr. Lundrigan’s report than to the oral testimony of plaintiffs own mental health counselor, Dr. Hagenbuch.[4]
The sex offender classification regulations provide that “in a particular case where the Board intends to rely on the testimony or report of an Expert Witness[5] prepared specifically for the purposes of the registration status and classification hearing, said notification shall inform the sex offender or his Authorized Representative of this intention.” 803 C.M.R. §1.09(2). In addition, where the offender is indigent and the Board intends to rely on expert evidence prepared specifically for classification, the Board may grant fees to the offender for his own expert. C. 6, §178L(c). Presumably, if the Board were required to present specific expert evidence in all cases, there would be no need to note particular cases where the Board intends to rely on such evidence. It follows, therefore, that the statute does not mandate expert evidence.
In cases where an offender is not determined to be indigent, logically, that offender is responsible for retaining an expert to refute any experts relied on by the Board. Since Dr. Lundrigan’s report was prepared as a condition of plaintiffs probation, however, and not specifically for the classification proceedings, it should not constitute expert evidence.[6] Rather, Dr. Lundrigan’s report falls under the category of ordinary documentary evidence for which the agency rule that “evidence may be admitted . . . only if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs” is applicable. 803 C.M.R. §1.19.
In arguing against the reliability of Dr. Lundrigan’s report, plaintiff points to literature that suggests that predictions about recidivism rates for sex offenders are inherently unreliable. Such literature, however, was not presented to the hearing officer to refute Dr. Lundrigan’s conclusions. Plaintiff argues that psychiatric or psychological opinion evidence is only admissible where the theory or process underlying the opinion is reasonable. While such evidence may be subject to stricter scrutiny in criminal proceedings, the rules of evidence are different in an agency proceeding. The plaintiff has pointed to no appellate decision in which a sex offender specific evaluation was inadmissible because of its unreliability. Actually, the Appeals Court concluded “that the Legislature has made a considered decision to draw on qualified and experienced professionals in the field to bring to bear their knowledge and informed judgment on the necessary, but difficult, task of evaluating whether sex offenders are likely to reoffend.” Commonwealth v. Bradway, 62 Mass.App.Ct. 280, 287 (2004).
In Bradway, a sex offender had been declared a sexually dangerous person by the Superior Court and had been civilly committed, and the Appeals Court affirmed, finding that “the [sexually dangerous person] statute was drafted with the intention that the qualified examiners’ expert opinion testimony be admitted for consideration by the fact finder.” Id. at 281. As in the sexually dangerous persons statute, the sex offender classification regulations contemplate the Board’s reliance on sex offender specific expert opinions. 803 C.M.R. 1.40(15). While Dr. Lundrigan’s report was not provided specifically for the classification proceedings, it was prepared for plaintiffs probation officer for similar reasons. Those reasons include assessing plaintiffs level of dangerousness and risk of re-offense. Because such evidence is clearly contemplated by the statute, this court finds that the hearing examiner did not abuse her discretion in admitting and considering Dr. Lundrigan’s report.
Despite the agency rules regarding admissibility of evidence in these proceedings, plaintiff argues that his constitutional due process right to confront his accuser was violated when Dr. Lundrigan’s report was admitted without his testimony and cross examination. Plaintiff cites Crawford v. Washington for this proposition. 124 S.Ct. 1354 (2004). However, the Supreme Judicial Court has held that this right does not apply to civil commitment proceedings. Commonwealth v. Given, 441 Mass. 741 (2004). In this case, such as in civil commitment proceedings, the standard for admission of evidence is more liberal than in a criminal trial. Arguably, a civil commitment proceeding is more akin to a criminal proceeding than is a sex offender registration proceeding. Given that offenders are not legally entitled to confront their accusers in civil commitment proceedings, this court finds that plaintiff did not have a constitutional right to confront Dr. Lundrigan under the circumstances of this case.
Given the admissibility of Dr. Lundrigan’s specific sex offender evaluation report, the hearing examiner did not abuse her discretion in considering and giving substantial weight to Dr. Lundrigan’s findings. Although Dr. Lundrigan examined plaintiff directly for only two hours, he reviewed plaintiffs criminal history and spoke with plaintiffs probation officer and psychologist, Dr. Hagenbuch. Dr. Lundrigans’s report notes that plaintiff was somewhat evasive, as was expected, and that more time would be beneficial in getting plaintiff to open up. Despite the brevity of the evaluation, Dr. Lundrigan noted in his report that
[plaintiffs] flagrant contacts with the victims in public, his continued attempts to contact when he should have perceived that they were uncomfortable if not frightened by him, his following them into buildings as they tried to flee from him, his direct and unabashed presentation of his deviant sexual interest to them, and his approach of more than one victim in the same area are of great concern . . . *503 When asked how he manages his desires, he stated that he “controls himself." I submit that the evidence of three incidents brought before the court . . . indicates that [plaintiff] cannot control himself ... It has been demonstrated that the threat of police and court intervention is not sufficient to curb his behavior and that either (a) he is unable to “control himself’ or (b) he considers accosting young girls and requesting sexual favors from them as things being “in control.”
Ultimately, Dr. Lundrigan reported that he believed plaintiff to be a high risk to re-offend, as of November 5, 2002.
With respect to the testimony of Dr. Hagenbuch at the agency hearing, he provided evidence about ongoing treatment which he has been providing plaintiff since 2002. Dr. Hagenbuch testified that plaintiffs wife requested that plaintiff begin therapy. She reportedly wanted him to get help with his anger management issues, so that plaintiffs family life, as well as his work life, would improve. Dr. Hagenbuch testified that he agreed with Dr. Lundrigan’s report stating that plaintiff should be constrained by the court from having contact with any of his victims, and that plaintiff should be in a treatment program for sex offenders. Dr. Hagenbuch also testified that he was not providing sex offender specific treatment to plaintiff; even though he believed he was qualified to give such treatment. He testified that he believed plaintiff to be a moderate risk to re-offend.
Because Dr. Hagenbuch, by his own testimony, was focusing his therapy on plaintiffs anger management issues, and not specifically on his sexual fetishes and issues, the hearing examiner did not abuse her discretion in giving less weight to Dr. Hagenbuch’s recommendation that plaintiff only posed a moderate risk to re-offend. Although he had been treating plaintiff for a longer period of time, a fact finder could have reasonably found that his assessment was less convincing than that of an assessment done for the purpose of creating a sex offender specific evaluation.
In addition to the report and testimony of Dr. Lundrigan and Dr. Hagenbuch, respectively, the hearing examiner applied the statutory classification factors to the documentary evidence relating to plaintiffs prior offenses, including the fact that plaintiff denies criminal responsibility for the offenses committed against his niece, that several of plaintiffs victims were extra-vulnerable victims,[7] that plaintiff had extended his victim pool outside the familial boundaries allowing for a wider range of potential victims, and that there was a compulsive nature to plaintiffs offense given the existence of multiple victims and multiple offenses on one victim. These factors she found to be quite troublesome. The hearing examiner also considered the plaintiffs substantial compliance with his probation conditions, his recent enrollment in sex offender specific treatment, and the positive aspects of his family and work situation, but found that the aggravating factors outweighed these positive circumstances.
This court concludes that the hearing examiner appropriately considered the relevant factors in making the final agency decision classifying plaintiff as a level three sex offender, and reasonably found that the plaintiff poses a high level of danger and risk of re-offense, based on the evidence presented. Plaintiffs motion for judgment on the pleadings is therefore DENIED, and defendant’s cross motion is ALLOWED.

The day of his evidentiary hearing, April 2, 2004, plaintiff waived his right to counsel as a result of the determination that he did not meet the indigency level required for a court-appointed attorney. R. 3688, Transcript, p. 4. In his affidavit of indigency, plaintiff reported savings of $35, and an estimated monthly after-tax income of $1,280. R. 3685. The record does not contain documentation stating the reasons that plaintiff did not qualify for court-appointed counsel, and this court must assume that the guidelines for determining indigency, under c. 21 ID, were properly applied. Notably, plaintiff did qualify for court-appointed counsel for purposes of this appeal.

In this case, the hearing examiner was Doreen Faye. Transcript, p. 1. Counsel for the Board in this appeal orally represented that Ms. Faye was a licensed psychologist. It is unclear whether Ms. Faye was a member of the Board or an employee of the Board.

In Covell v. Department of Social Services, the Supreme Judicial Court found that it was appropriate for a social worker to support allegations of abuse by an offender and list that offender’s name in the department registry, despite his having been acquitted at a criminal trial. 439 Mass. 766, 779 (2003). In this case, the Board has an even stronger position in accepting the allegations by plaintiffs victim as true, given that plaintiff actually pled guilty to the sex offense.

Plaintiff also claims that the hearing examiner was not qualified to assess plaintiffs level of risk and potential for re-offense. This argument is not persuasive because the nature of the hearing is to have an impartial fact-finder assess the evidence presented by both parties. There are no noted statutory qualifications for hearing examiners. As is the case in many civil court proceedings, the judge of the facts need not be an expert in any particular field.

An Expert Witness is defined in the regulations as “a licensed mental health professional, excluding members of the Sex Offender Registry Board, whose testimony and report offering an opinion as to a sex offender’s risk of re-offense and degree of dangerousness were prepared expressly for reliance by a Party at a hearing conducted pursuant to 803 CMR 1.07-1.26.” 803 C.M.R. §1.03.

Even if this court were to find that the Board relied on an expert witness report prepared specifically for the classification proceedings, plaintiff would have had the opportunity to refute such a report with his own expert; and by not doing so, plaintiff would have waived his right to argue against the admissibility of that evidence on appeal.

An extra-vulnerable victim includes a victim under the age often. 803 C.M.R. 1.40(9)(c)(4).