COMMONWEALTH *vs.* STEPHEN BRADWAY.

No. 02-P-491.

Worcester. April 13, 2004. - October 18, 2004.

Present: CYPHER, GRASSO, & KAFKER, JJ.

*Sex Offender. Practice, Civil,* Sex offender. *Evidence,* Sex offender, Expert
opinion. *Witness,* Expert. *Statute,* Construction.

Discussion of the role of qualified examiners in the statutory scheme designed
    to evaluate the likelihood of a sex offender to reoffend, as found in G. L.
    c. 123A. [283-285]
This court concluded that G. L. c. 123A, § 14(*c*), which makes admissible
    "the report of any qualified examiner" in a proceeding seeking the com-
    mitment of an individual as a sexually dangerous person pursuant to G. L.
    c. 123A, also provides for the admissibility of the opinion testimony of the
    qualified examiners at trial, without subjecting it to the more rigorous test
    of admissibility set forth in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993), and *Commonwealth* v. *Lanigan,* 419 Mass. 15 (1994).
    [285-289]
Nothing in the record of a proceeding seeking the commitment of the
    defendant as a sexually dangerous person pursuant to G. L. c. 123A sug-
    gested that the judge could not properly evaluate expert opinion testimony
    provided by the statutorily mandated qualified examiners. [289-290]
In a proceeding seeking the commitment of the defendant as a sexually danger-
    ous person pursuant to G. L. c. 123A, the evidence was sufficient for the
    judge to conclude that the Commonwealth proved beyond a reasonable
    doubt that the respondent was likely to reoffend if not confined to a secure
    facility [290-291], and the judge did not err in declining to consider less
    restrictive alternatives to confinement [291-292].

CIVIL ACTION commenced in the Superior Court Department on
February 28, 2001.

The case was heard by *Francis R. Fecteau,* J.

*Colleen A. Tynan* for the respondent.

*Ellyn H. Lazar-Moore,* Assistant District Attorney, for the
Commonwealth.

KAFKER, J. The respondent, Stephen Bradway, appeals from a

judgment and order of the Superior Court finding him a sexually dangerous person and committing him to the treatment center for sexually dangerous persons. On appeal, the respondent claims that the trial judge committed error by admitting in evidence expert opinion testimony from the statutorily mandated "qualified examiners." The respondent claims the judge should have subjected the testimony to a *Daubert-Lanigan*[1] assessment and excluded it as unreliable. The respondent also contends that the Commonwealth failed to prove that he is likely to reoffend, as required by G. L. c. 123A, and that there were not any less restrictive alternatives to confinement.

We affirm as we conclude that the statute was drafted with the intention that the qualified examiners' expert opinion testimony be admitted for consideration by the fact finder. Also, the evidence at trial was sufficient for the trial judge to conclude that the Commonwealth proved beyond a reasonable doubt that the respondent is likely to reoffend if not confined to a secure facility.

1. *Background.* The judge's fact findings, which are supported by the record, establish that the respondent, age thirty-seven at the time of trial, had committed numerous sex offenses.[2] The respondent committed his first sex offense at the age of seventeen, against his nine year old sister. For this offense, the respondent was adjudicated a delinquent by reason of rape of a child under sixteen and was committed to the Department of Youth Services.

In May, 1985, when he was twenty-one, the respondent pleaded guilty to rape of a child with force and indecent assault and battery on a child. The child was the four year old grandson of the woman with whom he was living. He received six years' probation, with special conditions, and was required to undergo sex-offender treatment.

In September, 1992, the respondent pleaded guilty to two counts of forcible rape of a child as well as two counts of indecent assault and battery on a child under the age of fourteen.

---

[1]*Daubert* v. *Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). *Commonwealth* v. *Lanigan,* 419 Mass. 15 (1994).

[2]The parties stipulated to a number of exhibits, including those establishing his various convictions.

The offenses involved two boys, aged eight and thirteen, for whom he was babysitting; they were the nephews of his girlfriend. He received four concurrent sentences of seven to ten years at the Massachusetts Correctional Institution at Cedar Junction.

The Commonwealth filed a petition pursuant to G. L. c. 123A, § 1, on February 28, 2001, the date that the respondent was due to be released from prison. He was ordered detained on the same day, and after a hearing, probable cause was found to believe he was a sexually dangerous person. The respondent waived his right to a jury, and a bench trial ensued.

The Commonwealth introduced the testimony of two qualified examiners, Stephen DeLisi, Ph.D., and Peter Cohen, M.D., who had interviewed the respondent and reviewed his records. Each opined that the respondent was a pedophile, as defined in the Diagnostic and Statistical Manual of Mental Disorders (rev. 4th ed. 2000), by the American Psychiatric Association (commonly referred to as DSM-IV), and the judge so found. The qualified examiners also testified, and the judge found, that the respondent was likely to reoffend if not confined to a secure facility. The respondent submitted no expert testimony of his own.

In determining that the respondent was likely to reoffend, the judge and the experts found significant the respondent's "recurrent commission of sexual assaults against children . . . during a ten year period, including the most recent following a period of probation during which the [respondent] obtained some sex offender treatment."[3]

The judge also emphasized that DeLisi found significant the "diversity of victims, both related and unrelated, both male and female and [the] increasing force" used against the victims, culminating in the final attack, the repeated rape of the thirteen year old boy, in which the respondent, "lying on top of the victim on a bed, . . . placed his hand over the victim's mouth, and . . . ejaculated on the boy's back."

The judge also found that at the time of trial, the respondent

---

[3]The respondent had been either incarcerated or held at the treatment center since 1991. Therefore, the respondent's notation that his last offense occurred "over ten years ago" is of little persuasive value.

had not completed the sexual offender treatment program (SOTP) and seemed to have little understanding of the factors that led to his offenses and no "firm grasp of relapse prevention plans and strategies, other than an overly simplistic 'I know I can't be around children.' "[4] The judge's findings also reflected the qualified examiners' emphasis on the respondent's isolation and history of difficulty in establishing appropriate peer relationships with adults.

The expert evidence was originally received de bene, as the respondent had filed a motion to exclude the opinion testimony of the Commonwealth's witnesses as unreliable according to the *Daubert-Lanigan* test. The judge ultimately denied the motion. At trial he stated that "the statute governs" the admissibility of the testimony.[5] He also went on to say that "frankly, testimony of a trained experienced psychologist and psychiatrist would generally meet a *Daubert* analysis." In his decision, without expressly addressing the *Daubert-Lanigan* question, he found "the testimony and opinions of the Commonwealth's witnesses to be based upon sufficient education, training and experience, and upon a reasonable degree of medical or psychological certitude; both have had experience in the evaluation and treatment of sex offenders. The opinions of the Commonwealth's witnesses are credible and supported in the evidence, notwithstanding that neither had utilized 'actuarial tests.' Both incorporated 'actuarial factors' in guiding their opinions."

2. *Admissibility of expert testimony.* Whether the testimony of qualified examiners is admissible absent a determination that the anticipated testimony meets the standards set by *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597 (1993), and *Commonwealth* v. *Lanigan,* 419 Mass. 15, 26 (1994), is an issue of first impression for the appellate courts of Massachusetts.

There can be no question that qualified examiners are central to the statutory scheme designed to evaluate the likelihood of a

---

[4] The respondent was in phase three of the SOTP. He had not entered phase four, in which residents must complete a comprehensive relapse-prevention program.

[5] He further stated, "I think the Legislature has pretty much commanded the waterfront and said, this stuff comes in."

sex offender to reoffend. The Legislature defined the qualifications of these examiners with specificity. Each must be "a physician who is licensed . . . [and] who is either certified in psychiatry by the American Board of Psychiatry and Neurology or eligible to be so certified, or a psychologist who is licensed . . . ." The examiner must also have "two years of experience with diagnosis or treatment of sexually aggressive offenders" and be designated by the Commissioner of Correction. See G. L. c. 123A, § 1, as appearing in St. 1993, c. 489, § 1. The examiners possessed these qualifications in the instant case.

The role of the qualified examiners is defined by statute as follows: "If the court is satisfied that probable cause exists to believe that the person named in the petition is a sexually dangerous person, the prisoner . . . shall be committed to the treatment center for a period not exceeding 60 days for the purpose of examination and diagnosis under the supervision of two qualified examiners. . . ." G. L. c. 123A, § 13(a), as inserted by St. 1999, c. 74, § 8. The examiners shall "file with the court a written report of the examination and diagnosis and their recommendation of the disposition of the person named in the petition." *Ibid.* The statute also expressly provides that "the report of any qualified examiner . . . shall be admissible at the trial . . . ." G. L. c. 123A, § 14(c), as appearing in St. 1999, c. 74, § 8.[6]

The Legislature's power to mandate the use of qualified examiners and the consideration of their evidence in court is also well-established. As the Supreme Judicial Court stated in *Meunier's Case,* 319 Mass. 421, 425 (1946), "[t]he Legislature doubtless has the power to prescribe the rules of evidence and the methods of proof to be employed in trials in court and in

---

[6]Also admissible are "probation records, psychiatric and psychological records and reports of the person named in the petition, . . . police reports relating to such person's prior sexual offenses, incident reports arising out of such person's incarceration or custody, oral or written statements prepared for and to be offered at the trial by the victims . . . and any other evidence tending to show that such person is or is not a sexually dangerous person." G. L. c. 123A, § 14(c). See *Commonwealth* v. *Reese,* 438 Mass. 519, 527 (2003) (noting distinction between evidence specifically made admissible by statute and the concluding "catch-all" provision of § 14(c), which "authorizes the admission only of evidence that is independently admissible under the rules of evidence").

hearings before administrative boards. It may change the rules of common law or those provided by existing statutes, and may make competent that which had been previously inadmissible."[7]

Moreover, in interpreting the previous version of c. 123A,[8] which was nearly identical to the current version on this issue, the court determined that "the legislative purpose is plain. The examining psychiatrists are to have access to a wide range of information in making their diagnoses. . . . [T]he opinions of the examining psychiatrists based on such information were to be competent." *Commonwealth* v. *McGruder*, 348 Mass. 712, 715 (1965), cert. denied, 383 U.S. 972 (1966). The court also stated that "[t]hese provisions are a very radical departure from the rules of evidence which ordinarily govern," but concluded that "the Legislature has made its policy clear in this regard and it is not for us to quarrel with it." *Ibid.* See *Commonwealth* v. *Boucher*, 438 Mass. 274, 280 (2002) (emphasizing "the well-settled and logical rule of statutory construction that, when the Legislature reenacts a statute using the same language, the Legislature must be presumed to have adopted the prior judicial construction of that language"); *Commonwealth* v. *Given*, 441 Mass. 741, 744 (2004).

Notwithstanding the statute's reliance upon the involvement and input of qualified examiners, the respondent argues that their testimony should not have been admitted without satisfying the admissibility standards of *Daubert-Lanigan* and that those standards would not have been met in the instant case.

---

[7]We note that no constitutional due process issues have been raised by the parties in the instant case. Furthermore the Supreme Court has previously rejected such a claim and held that expert psychiatric testimony pertaining to future dangerousness is admissible even in the most grave of circumstances — the penalty phase of a capital case. See *Barefoot* v. *Estelle*, 463 U.S. 880, 896 (1983). Also the Supreme Judicial Court has rejected a due process challenge to the admission of certain hearsay contained in police reports in a G. L. c. 123A proceeding. *Commonwealth* v. *Given*, 441 Mass. 741, 745-747 (2004). See generally *Hill, petitioner*, 422 Mass. 147, cert. denied, 519 U.S. 867 (1996); *Commonwealth* v. *Bruno*, 432 Mass. 489, 503 (2000); *Dutil, petitioner*, 437 Mass. 9 (2002).

[8]The previous version of G. L. c. 123A described the manner in which hearings to determine sexual dangerousness were to be conducted and stated "[a]ny psychiatric report filed under this chapter shall be admissible in evidence in such proceeding." *Commonwealth* v. *McGruder*, 348 Mass. 712, 715 (1965), cert. denied, 383 U.S. 972 (1966).

*Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, which gave rise to our *Lanigan* framework, has as its foundation rule 702 of the Federal Rules of Evidence. See *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, *supra* at 587; *Commonwealth* v. *Lanigan*, 419 Mass. at 25. See also Annot., Post-*Daubert* Standards for Admissibility of Scientific and Other Expert Evidence in State Courts, 90 A.L.R. 5th 453 (2001 & Supp. 2004). The analysis " 'entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.' . . . The judge thus has a gatekeeper role." *Commonwealth* v. *Lanigan*, *supra* at 26, quoting from *Daubert*, *supra* at 592-593. See *Canavan's Case*, 432 Mass. 304, 310 (2000). As a rule of evidence, *Daubert-Lanigan* assessment may, however, be modified by legislative action. See *Meunier's Case*, 319 Mass. 421. See also Kavanagh & Welnicki, A Practical Overview of Massachusetts General Laws Chapter 123A: Care, Treatment and Rehabilitation of Sexually Dangerous Persons, 24 W. New Eng. L. Rev. 1, 45 (2002) ("[C]ourts would resolve any conflict between chapter 123A and the *Daubert-Lanigan* standard in favor of the statute").

While the respondent acknowledges that c. 123A, § 14(*c*), makes admissible "the report of any qualified examiner," he nonetheless contends that the statute allows only written reports and not testimonial evidence. Although the statute only expressly allows written reports and does not address testimony, the respondent's reading of the statute is unpersuasive. It simply would make no sense to allow the admission of a report, but to subject the examiner's testimony — the means by which the report can be explained or understood — to a more rigorous test of admissibility.[9] We have no reason to believe that the Legislature intended such a result.

In fact, the courts have required expert testimony to satisfy c. 123A requirements without drawing a distinction between the

---

[9]Cf. *Commonwealth* v. *Markvart*, 437 Mass. 331, 338 (2002) ("the qualified examiner's report is the equivalent of the direct examination of the expert, and the report as submitted to the jury should therefore be subject to the same constraints").

reports and testimony. See *Commonwealth* v. *Bruno*, 432 Mass. 489, 511 (2000) ("Whether a person suffers from a mental abnormality or personality defect, as well as the predictive behavioral question of the likelihood that a person suffering from such a condition will commit a sexual offense, are matters beyond the range of ordinary experience and require expert testimony"); *Commonwealth* v. *Dube*, 59 Mass. App. Ct. 476, 482 (2003), quoting from G. L. c. 123A, § 13(*a*) ("If a finding of sexual dangerousness requires exploration of mental or personality disorders and predictions about future behavior, if expert testimony is required for a finding of probable cause to commit a person to the [treatment center], and if the statutory purpose for commitment is 'examination and diagnosis under the supervision of two qualified examiners,' . . . then it is scarcely possible that the need for expert testimony does not persist through trial"). Furthermore, where reports are made admissible by statute, we have made clear that their authors must be made available for cross-examination. See *Gilmore* v. *Gilmore*, 369 Mass. 598, 603-605 (1976); *Adoption of Georgia*, 433 Mass. 62, 69 (2000); *Abdeljaber* v. *Gaddoura*, 60 Mass. App. Ct. 294, 299 (2004).

The respondent contends, nonetheless, that *Daubert-Lanigan* assessment is required, and will not be satisfied, because the qualified examiners' opinion testimony is inherently unreliable, particularly where it is based on clinical evaluation rather than actuarial factors. We conclude, however, that the Legislature has made a considered decision to draw on qualified and experienced professionals in the field to bring to bear their knowledge and informed judgment on the necessary, but difficult, task of evaluating whether sex offenders are likely to reoffend.

The Legislature's views on the necessity of the task are clear. In enacting the current version of G. L. c. 123A,[10] the Legislature determined that "the danger of recidivism posed by sex offenders, especially sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior, to be grave and that the protection of the public from these sex offenders is of paramount interest to the government."

---

[10]See *Commonwealth* v. *Bruno*, 432 Mass. at 494-497, for a discussion of the statutory history of G. L. c. 123A.

St. 1999, c. 74, § 1.[11] Mindful of the difficulty and uncertainty of predicting future dangerousness, the Legislature took particular care in G. L. c. 123A to define the qualifications and involvement of the qualified examiners to address these concerns. Furthermore, the statute requires that there be a clinical component to the qualified examiners' review, as it provides that the sex offender "shall be committed to the treatment center for . . . the purpose of examination and diagnosis under the supervision of the two qualified examiners . . . ." G. L. c. 123A, § 13(*a*).[12]

The essence of this approach, and its reasonableness, are

---

[11]The court has also emphasized society's "legitimate," "substantial," and "compelling" interest in being free from sexual predators. See *Commonwealth* v. *Bruno*, 432 Mass. at 504, 512; *Commonwealth* v. *Knapp*, 441 Mass. 157, 159 (2004).

[12]There is also nothing exceptional about the expert testimony in the instant case, which the trial judge accurately described as a clinical evaluation guided by risk factors identified in the literature. The respondent nevertheless sought to demonstrate through reference to publications in the field that there is disagreement, at times fierce, among psychiatric professionals as to how accurately they can predict future dangerousness, with further disagreement arising depending on whether the opinions are based on clinical observation, risk factors, actuarial tables, or combinations of these different approaches. See, e.g., Hanson & Bussiere, Predicting Relapse: A Meta-Analysis of Sexual Offender Recidivisim Studies, 66 J. of Consulting and Clinical Psychol. 348 (1998); Janus & Prentky, Forensic Use of Actuarial Risk Assessment with Sex Offenders: Accuracy, Admissibility and Accountability, 40 Am. Crim. L. Rev. 1443, 1444 (2003) (authors *express* concern that "[c]*linical judgments of* dangerousness — judgments that ultimately rest on the ipse dixit of a mental health professional are a routine part of the judicial landscape. In contrast, actuarial risk assessment — which employs empirically derived 'mechanical' rules for combining information to produce a quantitative estimate of risk — is novel in the legal arena and seems to be setting off a variety of alarm bells"). Although the respondent is less than clear, he appears to argue that if any approach were acceptable, it must be a purely actuarial one. Regardless, the Legislature required a clinical evaluation. The Legislature also only directed that qualified examiners provide the testimony, not what their testimony would be, or which school of thought would trump in a divided field. We further note that a similar approach to discrediting expert testimony was rejected in *Commonwealth* v. *Reese*, 438 Mass. at 526-527, in which the court overturned a Superior Court decision finding no probable cause in a c. 123A proceeding. In so doing, the court criticized the "judge's rejection of [an expert's] testimony that Reese was likely to commit sexual offenses, . . . based largely on the [judge's] conclusion that articles . . . on sexual recidivism and studies of sexual recidivism were more reliable than [expert's] testimony and more legally authoritative," remarking that there was no expert

distilled in the court's analysis in *Commonwealth* v. *Gomes*, 355 Mass. 479 (1969). There the court held: "The defendant urges also that the concept 'sexually dangerous person' is inexact and without medical significance for psychiatrists. It is our view that the conclusions of expert physicians who have observed the conduct of emotionally afflicted persons having a history of aggressive, sexual misconduct can be of help to the [fact finder]. . . ." (Citation omitted.) *Id.* at 483. Cf. *In re Melton*, 597 A.2d 892, 899-900 (D.C. 1991) ("The Legislature has effectively decided that the state of the pertinent art or scientific knowledge permits a reasonable opinion to be asserted by an expert, and we would be impermissibly intruding upon a legislative prerogative if we were to challenge that judgment" [internal quotations and citation omitted]). We conclude, therefore, that the respondent is essentially asking us to dismantle the statutory framework. See, e.g., *Barefoot* v. *Estelle*, 463 U.S. 880, 896 (1983) (rejecting challenge to psychiatric testimony with respect to issue of defendant's future dangerousness as an attempt to "disinvent the wheel"). This we decline to do.[13]

A qualified examiner's testimony is, of course, subject to the test of rigorous cross-examination. "If the opinions of the examining psychiatrists are based on incorrect information it would be open to a [respondent], as was done here to some extent, to refute it." *Commonwealth* v. *McGruder*, 348 Mass. at 716. See *Barefoot* v. *Estelle, supra* at 901 n.7 ("All of these professional doubts about the usefulness of psychiatric predictions can be called to the attention of the jury," which will be "able to separate the wheat from the chaff"). In the instant case, the cross-examination probed deeply into the bases of the qualified examiners' testimony, revealing the experts' methodology, their familiarity — or lack thereof — with the research in the field, and their understanding of different approaches to risk assessment and their various limitations. There is nothing in the

proof to that effect in the case. See *Commonwealth* v. *Blanchette*, 60 Mass. App. Ct. 924, 925 n.4 (2004).

[13]Finally, although the judge properly concluded that a *Daubert-Lanigan* analysis was not required prior to admitting the evidence, in making his fact findings he found the testimony to "be based on sufficient education, training and experience, and upon a reasonable degree of medical or psychological certitude."

record to suggest that the judge could not properly evaluate the expert testimony.

3. *Sufficiency of the evidence.* A "sexually dangerous person" is defined by c. 123A, § 1, as appearing in St. 1999, c. 74, § 6, as "any person who has been . . . convicted of . . . a sexual offense [as defined within the statute] and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility." A "mental abnormality" is defined as a "congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." G. L. c. 123A, § 1, as inserted by St. 1999, c. 74, § 4. The respondent does not challenge on appeal that he was convicted of certain of the statutorily enumerated sexual offenses. The two qualified examiners also testified, and the judge found, that the respondent suffered from a mental abnormality as defined in G. L. c. 123A, namely pedophilia.[14] These findings are well-supported and only marginally disputed.[15] We therefore focus on the third aspect of the statutory definition, that is, whether the respondent is "likely to engage in sexual offenses if not confined to a secure facility." G. L. c. 123A, § 1.

"Likely," as used in the statute, means "reasonably to be expected in the context of the particular facts and circumstances at hand." *Commonwealth* v. *Boucher,* 438 Mass. at 276.[16] This determination is to be made "on a case-by-case basis, by analyz-

[14]The respondent did not exercise his right to retain an expert on his own behalf. The statute provides such a right, and if the respondent is indigent, the court is to provide such an examiner. G. L. c. 123A, § 13(*d*).

[15]The respondent does not contest that he was found to be a pedophile. He argues, however, that being a pedophile does not necessarily involve problems controlling behavior. Here, however, the qualified examiners testified, and the judge found, that the respondent did have such a problem and that he suffered from a mental abnormality as defined by the statute. See *Commonwealth* v. *Rodriguez,* 438 Mass. 1011 (2003). We also believe that the thrust of the respondent's objection is directed at whether he is likely to reoffend.

[16]We reject the respondent's argument based on *Suzuki* v. *Yuen,* 617 F.2d 173 (9th Cir. 1980), wherein the court determined that, in order to be constitutional, a civil commitment statute must be worded so as to require the

ing a number of factors, including the seriousness of the threatened harm, the relative certainty of the anticipated harm, and the possibility of successful intervention to prevent that harm." *Ibid.* The statutory term does not mean "more likely than not," i.e., "fifty per cent plus one." *Id.* at 277.

The judge's careful fact findings, which are well-supported by the record, establish that the respondent is likely to reoffend if not confined to a secure facility. His diagnosis of pedophilia; his age; his extensive history of prior offenses with escalating violence even after treatment; his diverse victims, related and unrelated, male and female; his limited progress in the SOTP; and his isolation were all sufficient to support the judge's findings, which were informed by the qualified examiners' testimony. "Weighing and crediting the testimony are for the trier of fact, and we will not substitute our judgment for that of the trier of fact." *Hill, petitioner,* 422 Mass. 147, 156, cert. denied, 519 U.S. 867 (1996). The judge also articulated and correctly applied the appropriate legal criteria. *Ibid.*

4. *Necessity of confinement.* The respondent separately argues that the Commonwealth failed to prove that he was highly likely to reoffend if not confined to a secure facility because there was inadequate consideration of alternatives. The statute does not, however, provide for "less restrictive alternatives to commitment, such as 'postrelease supervision [or] halfway houses.' " *Commonwealth* v. *Bruno,* 432 Mass. at 502, quoting from *Kansas* v. *Hendricks,* 521 U.S. 346, 387 (1997) (Breyer, J., dissenting). Cf. *Commonwealth* v. *Knapp,* 441 Mass. 157, 161-162 & n.8 (2004) (after a finding of probable cause, a respondent must be committed to the treatment center; a judge has no authority to order any less restrictive setting). Rather it requires a finding that the sex offender is dangerous so that "confined commitment appears to be the only viable form of commitment." *Commonwealth* v. *Bruno, supra* at 502.

In the instant case, the judge, relying on both qualified examiners, made this finding, which was well-supported. Furthermore, it is not surprising that the qualified examiners did

State to demonstrate that a person subject to the law poses an "imminent" danger. That case did not address a sexually dangerous person statute.

not directly address less restrictive alternatives, as the statute does not provide for them.

The case on which the respondent relies for an alternative analysis, *Commonwealth* v. *Nassar*, 380 Mass. 908 (1980), is inapposite. In *Nassar* the court considered the "general" commitment statute in place at that time, G. L. c. 123 — *not* c. 123A. This is a critical distinction because G. L. c. 123, § 8(*a*), requires the Commonwealth to introduce "evidence that such person's judgment is so affected that he is unable to protect himself in the community *and that reasonable provision for his protection is not available in the community*" (emphasis supplied). *Id.* at 912, quoting from G. L. c. 123, § 8(*a*), as then in effect. By contrast, G. L. c. 123A provides no such alternative. Nor does it explicitly require that alternatives be expressly considered and rejected in making the decision whether the defendant is likely to reoffend unless confined in a secure facility. It contemplates gradations in confinement only to the extent that a person "committed as a sexually dangerous person to the treatment center . . . shall be held in the most appropriate level of security . . . ." G. L. c. 123A, § 6A, par. 1, as amended by St. 1993, c. 489, § 4. The same section sets forth a class of offenders who have already been found to be sexually dangerous persons who may "apply" for participation in a community access program. G. L. c. 123A, § 6A, par. 2, as inserted by St. 1993, c. 489, § 4. However, even if an offender is allowed to participate in such a program, the offender "shall continue to reside within the secure confines of [the Massachusetts Correctional Institution at Bridgewater]." G. L. c. 123A, § 6A, par. 3.

*Conclusion.* We determine that the judge properly admitted the qualified examiners' testimony and the Commonwealth has satisfied its burden to prove beyond a reasonable doubt that the respondent is likely to reoffend if not confined to a secure facility.

*Judgment affirmed.*