NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-396                                         Appeals Court

JACK GAMMELL, petitioner.


No. 13-P-396.

Bristol.     April 3, 2014. - July 15, 2014.

Present:  Kafker, Brown, & Sikora, JJ.


Sex Offender.  Evidence, Sex offender, Expert opinion,
     Scientific test, Age.  Witness, Expert.



     Petition filed in the Superior Court Department on November
6, 2009.

     The case was tried before Bonnie H. MacLeod, J.


     David Hirsch for the petitioner.
     Brendan J. Frigault for Massachusetts Treatment Center.


     KAFKER, J.  The petitioner, Jack Gammell, appeals the

judgment of the Superior Court finding him still sexually

dangerous pursuant to G. L. c. 123A, § 9.  He raises three

issues on appeal:  (1) whether a qualified examiner may testify

regarding his evaluation of the credibility of various

statements made by the petitioner during the clinical interview;

(2) whether the trial judge properly excluded from the trial the results of a penile plethysmograph assessment (PPG test) by the treatment center, including references to the assessment in a qualified examiner's report, when there had been no attempt to establish the reliability of the assessment; (3) whether the judge also properly excluded evidence on the possible effects of reduced testosterone resulting from aging on the likelihood of reoffending, when the petitioner had never been tested and therefore could submit no evidence of his own testosterone levels.  We affirm, as we discern no error in any of the trial judge's rulings.

Background.  The petitioner is currently civilly committed to the Massachusetts Treatment Center (treatment center) pursuant to G. L. c. 123A, § 9.  At trial, the Commonwealth presented the reports and testimony of two qualified examiners, Michael Henry, Psy.D., and Gregg Belle, Ph.D., as well as the testimony and report of a member of the community access board (CAB), Katrin Rouse-Weir, Ed.D.  All diagnosed the petitioner with pedophilia and determined that he remained a sexually dangerous person (SDP).  The petitioner presented the testimony of Eric Brown, Psy.D., and Joseph J. Plaud, Ph.D, each of whom opined that Gammell was no longer an SDP.

The jury were warranted in finding the following facts regarding the petitioner's history of offenses.  The petitioner,

age fifty-four at the time of trial, first offended at the age of twelve or thirteen, when he engaged in sexual activity with his eleven year old neighbor. He was adjudicated delinquent of indecent assault and battery and placed on probation. While on probation, he again engaged in sexual activity with the same girl. His probation was revoked. In 1991, when he was thirty-four, he sexually molested a two year old girl at least twenty times over a seven or eight month period, including fondling the child's chest, buttocks, and vagina. He was arrested, convicted, and sentenced to eight to ten years in State prison, three to serve, for indecent assault and battery on a child under fourteen. While on probation, he was convicted of an assault and battery on his girlfriend and was sentenced to serve the remainder of his sentence. Testimony was also presented regarding the petitioner's admission that he sexually assaulted his girlfriend's eight year old daughter in 1986.

Discussion. 1. Testimony regarding the petitioner's credibility. At trial, one of the qualified examiners, Michael Henry, testified regarding various statements made by the petitioner to him during a 2006 clinical examination provided for by statute. See G. L. c. 123A, § 13(a). In response to the petitioner's denial of having sexual fantasises about children, Henry said, "[M]y impression then and my impression remains that it's inaccurate. It's a falsehood, that he is not telling the

truth."  Elsewhere, Henry referred to his report:  "Mr. Gammell stated that he only sexually assaulted [the two year old girl] on one occasion and denied previous reports that he molested the child on multiple occasions . . . . I didn't credit it as a truthful statement."  He also explained that the petitioner "talks about sort of a very improbable process of, in his mind, turning a two year old child into an 18 year old, that goes from a toddler-age person to someone with large breasts and buttocks and, essentially, that's what he was truly interested in. . . . It's very improbable, so I didn't really credit it as a truthful statement.  I saw it as his attempt to be deceptive and avoid the obvious topic [that he] molested a child."  Henry stated that he did not "credit" Gammell's statement that he had his last fantasy about a child after his arrest for his offense with [the two year old child] in 1991.  Discussing the petitioner's attraction to children, Henry said that Gammell was not "being open and frank and truthful about his problem or that he has any kind of appreciation about what this means about him and what he's going to need to do to keep himself and other people safe in the future."  There were no objections to any of these statements.[1]

---

[1] For cases applying a substantial risk of miscarriage of justice standard to SDP cases, see Commonwealth v. Starkus, 69 Mass. App. Ct. 326, 340 (2007); Commonwealth v. Lynch, 70 Mass.

We have not previously addressed the question whether a qualified examiner can testify as to his opinion regarding the credibility of statements made by a petitioner during the clinical examination as part of his evaluation of the sexual dangerousness of the petitioner. Relying on criminal cases, and the general rule set out therein, the petitioner states, "No witness, expert or not, may offer an opinion as to the credibility of another witness." Commonwealth v. Polk, 462 Mass. 23, 36 (2012). See Commonwealth v. Ianello, 401 Mass. 197, 201-202 (1987); Commonwealth v. Montanino, 409 Mass. 500, 504 (1991). We conclude, however, that the distinct statutory responsibilities of the qualified examiners create an exception to the general rule.

"There can be no question that qualified examiners are central to the statutory scheme designed to evaluate the likelihood of a sex offender to reoffend. . . . Within that scheme, the qualified examiners are established as independent, court-appointed experts. They are integral to nearly every step of the civil commitment process set out in G. L. c. 123A." Johnstone, petitioner, 453 Mass. 544, 551 (2009) (quotation and citations omitted). Unless at least one of the qualified examiners concludes that a petitioner is sexually dangerous, the

---

App. Ct. 22, 29 (2007); Commonwealth v. Dresser, 71 Mass. App. Ct. 454, 458 n.10 (2008).

petitioner cannot be civilly committed. "[I]f the petitioner in a discharge proceeding refuses to be personally interviewed by examiners and lacks good cause for doing so, 'such person shall be deemed to have waived his right to a hearing on the petition and the petition shall be dismissed upon motion filed by the [C]ommonwealth.'" Id. at 551-552, quoting from G. L. c. 123A, § 9.

The statute also provides a "'very radical departure' from ordinary evidentiary rules," particularly in regard to the qualified examiners. McHoul, petitioner, 445 Mass. 143, 147 (2005), quoting from Andrews, petitioner, 368 Mass. 468, 473 (1975). According to G. L. c. 123A, § 14(c), "Juvenile and adult court probation records, psychiatric and psychological records and reports of the person named in the petition, including the report of any qualified examiner, . . . police reports relating to such person's prior sexual offenses, incident reports arising out of such person's incarceration or custody, oral or written statements prepared for and to be offered at the trial by the victims of the person who is the subject of the petition and any other evidence tending to show that such person is or is not a sexually dangerous person shall be admissible at the trial if such written information has been provided to opposing counsel reasonably in advance of trial." (Emphasis supplied.)

The statute further provides that "the court shall supply to the qualified examiners copies" of many of the reports and much of the information referenced above.  G. L. c. 123A, § 13(b).  If such reports have been admitted in evidence, it is permissible for the qualified examiners "to reference that evidence in their own expert testimony."  McHoul, petitioner, supra at 146.  The court has rejected arguments that the qualified examiners "should not have been permitted to testify to the jury about out-of-court statements the petitioner made to others and observation of the petitioner's conduct made by others on which the [qualified examiners] based their opinions," so long as those statements and observations appeared in reports made admissible by the SDP statute itself.  Ibid.[2]

In this context, we conclude that the Legislature also intended that the qualified examiners be permitted to testify concerning the credibility of statements made by the petitioner to the qualified examiner in the clinical evaluation required by statute, if such credibility determinations figure into their

---

[2] The court in McHoul emphasized that hearsay appearing in otherwise admissible reports was expressly made admissible by statute, and could be relied on by the qualified examiners.  The court concluded that the reports made admissible by statute "by their nature, often include the gathering of information from a variety of hearsay sources," thus signifying "the Legislature's determination that such hearsay should be admitted in sexually dangerous person proceedings."  Id. at 153.  Otherwise, it would make "mincemeat of the documents that the Legislature deemed admissible."  Ibid.

opinion regarding the sexual dangerousness of the petitioner. The qualified examiner's opinion regarding the sexual dangerousness of the petitioner is critical to the entire evaluation process. Essential to that evaluation is the qualified examiner's opinion regarding the information being provided by the petitioner during the clinical evaluation. This includes whether the petitioner is being truthful regarding his prior sexual offenses, his present attraction to children, and his future ability to control his sexual impulses. Not allowing such testimony by the qualified examiner would require qualified examiners to present to the jury an incomplete and distorted basis for their opinions. The statute clearly intends just the opposite: the qualified examiners are to be presented all relevant information and provide a thorough report of their analysis, which is to be presented to the jury, notwithstanding the ordinary rules of evidence.

To ensure that the qualified examiners do not usurp the role of the jury, the petitioner must be able to present his own experts, who will have similar freedom to opine on the credibility of the petitioner's testimony during their own clinical evaluations. See Santos, petitioner, 461 Mass. 565, 570 (2012). That is exactly what occurred in the instant case.

2. Exclusion of penile plethysmograph evidence. Prior to trial, the Commonwealth moved to exclude from trial all evidence

of the results of a PPG test administered to the petitioner during his commitment to the treatment center, including references to the PPG test in the petitioner's experts' reports, or the reports of the qualified examiner or the CAB. The Commonwealth moved to exclude the evidence on the ground that PPG testing did not meet the Daubert-Lanigan[3] standards for admissibility. The petitioner opposed the motion, claiming the PPG test was reliable. When the issue was raised on the day of trial, the judge concluded the evidence was inadmissible without a Daubert-Lanigan hearing, which the petitioner had not requested. During the trial, the petitioner asked the judge to reconsider her exclusion of the PPG evidence, but the request was denied.

On appeal, the petitioner argues that the Daubert-Lanigan requirements are inapplicable to G. L. c. 123A cases. He relies on the language in the statute making reports of the qualified examiners and the CAB admissible, as well as the decisions in Commonwealth v. Bradway, 62 Mass. App. Ct. 280 (2004), and Santos, petitioner, supra. In Bradway, this court concluded, based on well-established precedent, that the Legislature could expressly overrule evidentiary requirements. See Bradway, supra at 284-285. See also McHoul, petitioner, 445 Mass. at 147-148

---

[3] See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); Commonwealth v. Lanigan, 419 Mass. 15 (1994).

("[W]e have repeatedly applied the evidentiary rules prescribed by the Legislature for such proceedings").  We explained that the qualified examiners' clinical evaluations, reports, and testimony were all required, and were made admissible by statute, as the "Legislature has made a considered decision to draw on qualified and experienced professionals in the field to bring to bear their knowledge and informed judgment on the necessary, but difficult, task of evaluating whether sex offenders are likely to reoffend."  Bradway, supra at 287.  We therefore rejected the petitioner's contention in that case that "Daubert-Lanigan assessment is required, and will not be satisfied, because the qualified examiners' opinion testimony is inherently unreliable, particularly when it is based on clinical evaluation rather than actuarial factors."  Ibid.

In Santos, the court "agree[d] with the petitioner that excluding his experts' reports could create an unfair imbalance of evidence, especially because it would otherwise be difficult for petitioners to respond to the information in the CAB and qualified examiner reports, much of which is hearsay."  Santos, supra at 569.  The court further explained that "[t]he petitioner's experts' reports ought to be have been admitted, but only on the same basis as those of the qualified examiners and the CAB."  Id. at 573 n.11.  That basis, the court explained, included redactions.

The petitioner extrapolates from these cases to argue that PPG testing evidence is not subject to Daubert-Lanigan review, and there could be no redaction of any references to PPG testing in the reports prepared by the qualified examiners, the CAB, or the petitioner's own experts. The ultimate question is again whether the Legislature intended to override the ordinary rules of evidence. Unlike the clinical evaluation addressed in Bradway, supra, PPG testing is not expressly provided for by statute as an essential aspect of a qualified examiner's own review. Rather, it is an assessment device that was employed by the treatment center in this case, and only referenced in passing in the CAB report and in one of the qualified examiner's reports. The petitioner nevertheless relies on these references, and the reasoning in Bradway and Santos, to argue that the PPG testing evidence is per se admissible. But the Legislature's requirement that the qualified examiners' reports be admissible does not mean that everything in the reports is automatically exempt from further review for admissibility and redaction. Moreover, whether particular redactions are permissible or required in the otherwise admissible reports and testimony of these experts is not resolved in Bradway and Santos, but rather must be analyzed according to the standards set out in Department of Youth Servs. v. A Juvenile, 398 Mass.

516, 531 (1986); Commonwealth v. Markvart, 437 Mass. 331, 335-337 (2002); and McHoul, petitioner, supra at 149-151.

In Markvart, the court was presented with the admissibility in c. 123A proceedings of police reports and witness statements from a nol prossed complaint that had been considered by qualified examiners. See Markvart, supra at 332. The court concluded that the reports were not independently admissible according to the statute, as they were not reports or statements related to convictions or adjudications, and were therefore subject to redaction from the qualified examiners' reports presented to the jury according to the principles set out in Department of Youth Servs. v. A Juvenile, supra. See id. at 336-337. The court further explained that the statute expressly contemplated that "qualified examiners may use 'such other information as may be pertinent or helpful to the examiners in making the diagnosis and recommendation.'" Ibid., quoting from G. L. c. 123A, § 13(b). In determining what information meets that requirement the court stated: "Qualified examiners, as expert witnesses, may base their opinions on (1) facts personally observed; (2) evidence already in the records or which the parties represent will be admitted during the course of the proceedings . . . ; and (3) 'facts or data not in evidence if the facts or data are independently admissible and are a permissible basis for an expert to consider in formulating

an opinion."  Id. at 337, quoting from Department of Youth Servs., supra.  The court also noted that a voir dire may be required to determine whether the facts or data are independently admissible, and defense counsel may request such a voir dire.  Id. at 337 n.5.

We interpret this line of cases to draw a distinction between evidence that is independently made admissible by statute and evidence that remains subject to further consideration and redaction.  We conclude that the PPG tests here fall into the latter category.  They are not expressly made admissible by statute, nor are they an essential part of the qualified examiners' evaluation as set out in the statute.  Rather, they are an assessment device employed by the treatment center that must be independently admissible and constitute a permissible basis for a qualified examiner to rely on in formulating an opinion.

Here, we have no basis from the record or case law to determine whether PPG tests constitute a permissible basis for an expert to consider in formulating an opinion.  This is not an ordinary medical procedure, test, or report.  The petitioner made no attempt to "lay an adequate foundation either by establishing general acceptance in the scientific community or by showing that the evidence is reliable or valid through alternate means."  Canavan's Case, 432 Mass. 304, 310 (2000).

Nor did he request a voir dire.  See Markvardt, supra at 337 n.5.  The one case provided by the petitioner to the trial judge to support the admission of the testing, Commitment of Sandry, 67 Ill. App. 3d 949 (2006), is from out-of-State and is inconclusive.  In these circumstances, we discern no error in the redaction of the report to exclude the PPG test.

3.  Reduced testosterone levels.  Finally, the defendant claims the judge erred in sustaining the Commonwealth's objection to questioning on the effects of declining testosterone resulting from aging on the risk of reoffending. We conclude that the judge properly rejected this line of questioning as entirely speculative as there had never been testing of the defendant's testosterone levels, and thus there was no evidence to present on the issue.[4]

Judgment affirmed.

---

[4] Experts for the Commonwealth and for the defendant did, however, both testify regarding a decline in risk of reoffense after age fifty.  Even without testimony about testosterone levels, the defendant had that evidence available for argument.