NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-804

COMMONWEALTH

<u>vs</u>.

MARK ROMANOFF.

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 23.0</u>

The defendant, Mark Romanoff, appeals from his adjudication as a sexually dangerous person, arguing the trial judge erred by excluding from evidence a release plan written by the defendant's social worker and that one of the qualified examiners improperly was permitted to present data about the defendant's risk of sexual recidivism over a twenty-year period. We affirm.

<u>Background</u>.  Between 1989 and 1991, when the defendant was in his mid-thirties, he committed a series of rapes against three prepubescent boys.  The defendant pleaded guilty to two counts of rape of a child with force, G. L. c. 265, § 22A; one count of indecent assault and battery on a child under the age

of fourteen, G. L. c. 265, § 13B; and kidnapping, G. L. c. 265, § 26. He was sentenced to State prison sentences of twenty-two to thirty years for the first three offenses and to a term of nine to ten years for the kidnapping charge, all to run concurrently.[1]

At the conclusion of the defendant's sentences, the Commonwealth filed a petition under G. L. c. 123A, § 12, to have him committed to the Massachusetts Treatment Center (MTC) as a sexually dangerous person. At trial, the Commonwealth presented the testimony of two qualified examiners, Dr. Kaitlyn Peretti and Dr. Katrin Rouse-Weir. The defendant called two psychological experts of his own, Dr. Leonard Bard and Dr. Joseph Plaud, and a licensed social worker, Christina Patts. The jury found the defendant, who turned sixty-eight years old during trial, to be a sexually dangerous person, and the judge ordered him committed to the MTC for a term of one day to life, or until discharged under G. L. c. 123A, § 9 (§ 9).

Discussion. 1. Exclusion of written release plan. The Commonwealth filed a motion in limine to exclude from evidence the post-release service and treatment memo (release plan) written by Patts. The defendant opposed the motion, arguing

---

[1] He also pleaded guilty to threatening to commit a crime, G. L. c. 275, § 2. This conviction was placed on file.

2

that the qualified examiner's concerns about the defendant's ability to function if released made the release plan relevant. The judge ultimately excluded the release plan but allowed Patts to testify in detail about its contents.  For the first time on appeal, the defendant argues that the exclusion of the release plan itself "created a significant imbalance in the evidence" such that his rights to due process and to a fair trial were violated.  We review this claim for a substantial risk of a miscarriage of justice.  See R.B., petitioner, 479 Mass. 712, 717-718 (2018).

Sexually dangerous person proceedings depart from the ordinary rules of evidence in certain respects.  See McHoul, petitioner, 445 Mass. 143, 147 (2005); Andrews, petitioner, 368 Mass. 468, 473 (1975).  "[T]he Legislature has enacted a special set of statutory exceptions to the hearsay rule that apply in [sexually dangerous person] proceedings." Commonwealth v. Mackie, 100 Mass. App. Ct. 78, 84 (2021), citing G. L. c. 123A, § 14 (c).

For example, G. L. c. 123A, § 14 (c) (§ 14 [c]), like the analogous provision in § 9, provides that the "reports" of the Commonwealth's qualified examiners, as well as the defendant's "psychiatric and psychological records" are admissible, even though they would be excluded as hearsay under common-law

3

evidentiary rules.  See Santos, petitioner, 461 Mass. 565, 571 (2012).  Moreover, even though these provisions do not specifically make the defendant's expert's reports admissible, to prevent "an unfair imbalance of evidence," the Supreme Judicial Court has construed the term "psychiatric and psychological records" to include the defendant's experts' reports and make them admissible.  See id. at 569-570.  The court has applied this balance of evidence principle, derived from Blaisdell v. Commonwealth, 372 Mass. 753, 764-769 (1977) (defendant who seeks to assert insanity defense through expert testimony based in whole or in part on his statements must submit to examination by Commonwealth's expert), in other, limited circumstances.  See, e.g., Commonwealth v. Connors, 447 Mass. 313, 317(2006) ("to permit the defendant to offer his own expert testimony, based on personal interviews [with his own expert], while refusing to submit to interviews with court-appointed experts, would offend basic notions of fairness in such proceedings"); Gammell, petitioner, 86 Mass. App. Ct. 8, 11-12 (2014) (in departure from rules of evidence in sexually dangerous person proceedings, qualified examiners may offer their opinion on credibility of statements made to them, and defense experts must "have similar freedom").  But see Commonwealth v. Poissant, 443 Mass. 558, 564-565 (2005)

(declining to apply Blaisdell rule, "intended to correct a potential imbalance," to require defendant in sexually dangerous person proceeding, who must already submit to examination by two qualified examiners, to submit to examination by Commonwealth expert as condition of introducing his own expert testimony).

The balance of evidence principle thus levels the playing field where a statute or privilege gives one party an unfair evidentiary advantage over the other; it is not a free-flowing doctrine that makes the rules of evidence entirely inapplicable. We are not persuaded by the defendant's argument that the release plan should have been admitted because it was "an essential part of the qualified examiners' evaluation." Gammell, petitioner, 86 Mass. App. Ct. at 15. The qualified examiners referred to the release plan in their reports, but evidence does not become "essential" simply because an expert considered it. See id. at 13-14 (evidence "not expressly provided for by statute as an essential aspect of a qualified examiner's own review" and only "referenced in passing" in admitted reports not per se admissible). Significantly, the defendants' experts had equal access to the release plan. For example, Dr. Bard testified that he reviewed the release plan and was "more than satisfied" with it. He testified that most offenders do not have such a plan, whereas the defendant had "a

5

good solid release plan," including services from the Department of Mental Health and a "phenomenal" reentry network.  As noted, Patts, who wrote the plan, testified in detail about its contents.  The exclusion of the release plan itself did not create an imbalance in the evidence.

Nor was it admissible under the special statutory rules of evidence.  Although "[b]oth § 9 and § 14 (c) contain a catchall provision allowing the admission of 'any other evidence' tending to show whether a defendant is a sexually dangerous person[,] [w]e have declined to read those catchall provisions in a way that would eliminate all rules of evidence for purposes of sexually dangerous person proceedings."  McHoul, petitioner, 445 Mass. at 147 n.2.  If otherwise inadmissible hearsay does not fall within the scope of the statutory exceptions contained in § 14 (c), it remains inadmissible.  See Commonwealth v. Markvart, 437 Mass. 331, 335 (2002) ("hearsay not otherwise admissible under the rules of evidence is inadmissible at the trial of a sexually dangerous person petition unless specifically made admissible by statute"); Commonwealth v. Reese, 438 Mass. 519, 527 (2003) ("This exception . . . authorizes the admission only of evidence that is independently admissible under the rules of evidence").  Here, the release plan consists primarily of statements made to Patts by

nontestifying third parties. The defendant concedes that the release plan was hearsay, and he does not argue that it falls under any exception to the hearsay rule. The release plan was not admissible, therefore, under traditional evidentiary rules, the special exceptions of § 14 (c), or due process principles. The judge did not err by excluding it, and "[w]here there is no error, . . . there can be no risk of a miscarriage of justice." R.B., petitioner, 479 Mass. at 718.

2. Admission of twenty-year recidivism rates. The defendant also argues that a different Superior Court judge erroneously denied his pretrial motion in limine to exclude information about ten- and twenty-year rates of sexual recidivism from the 2021 revised edition of the Static-99R Evaluator's Workbook. On appeal, the defendant challenges only the evidence regarding the twenty-year rates, which came in through Dr. Peretti's testimony, as "irrelevant, speculative, and unreliable."

"The Static-99R is an actuarial tool, designed to predict the recidivism risk of sexual offenses in adult male sex offenders who have been convicted of at least one sexual offense." Commonwealth v. George, 477 Mass. 331, 335 n.2 (2017). A qualified examiner may use the Static-99R to assess a defendant's relevant risk factors and assign him a numerical

score indicating his risk of sexual recidivism after release. See id. at 339-340.  Importantly, although the risk category labels from the Static-99R are inadmissible, "the corresponding percentage reflecting the risk of sexual offense in qualified examiners' testimony" is admissible.  Id. at 341.

Where, as here, "a theory or methodology has been established as reliable in our courts . . . in the past, then a judge may take judicial notice of its reliability." Commonwealth v. Davis, 487 Mass. 448, 454-455 (2021).  "In contrast, when proposed expert testimony uses a new theory, or new methodology to apply an accepted theory, the proponent must establish its reliability using a Daubert-Lanigan analysis." Id. at 455.

The defendant argued in his motion in limine that although the recidivism rates in the 2016 update of the Static-99R workbook had been widely accepted, the new ten- and twenty-year rates in the 2021 update were not.  He did not, however, move for a Daubert-Lanigan hearing.[2]  "The failure to request a

---

[2] Although the record before us reflects that the motion judge decided several motions in limine months before the trial, including the defendant's motion to exclude the ten- and twenty-year recidivism rates, the record before us does not include a transcript of the hearing on the motion in limine, if a hearing was indeed held.  It is the appellant's burden to supply us with a record appendix sufficient to address the issues he presents on appeal.  See Commonwealth v. Woody, 429 Mass. 95, 97 (1999).

Daubert-Lanigan hearing to establish the reliability of expert testimony constitutes waiver of the issue." Esteraz, petitioner, 90 Mass. App. Ct. 330, 335 (2016).

"Nonetheless, regardless of whether such a hearing is held, a trial judge has an important responsibility as the gatekeeper of the evidence; before a witness may testify as an expert, the judge must make 'the threshold determination that the expert opinion is sufficiently reliable to go before the jury.'" Commonwealth v. Wilkerson, 486 Mass. 159, 172-173 (2020), quoting Commonwealth v. Hoose, 467 Mass. 395, 417 (2014). A judge's decision to admit expert testimony as reliable is reviewed for an abuse of discretion. See Davis, 487 Mass. at 455; Commonwealth v. Shanley, 455 Mass. 752, 762 (2010).

We are satisfied that the motion judge acted within his discretion in admitting testimony about twenty-year rates. In opposing the defendant's motion to exclude this evidence, the Commonwealth offered Dr. Peretti's affidavit, in which she explained the development of the twenty-year rates and the basis for their inclusion in the 2021 Static-99R workbook. The Commonwealth also submitted two scholarly articles that set forth the methodology used to develop the twenty-year rates. The defendant did not offer any literature or other material to counter the Commonwealth's evidence. And even though we are

permitted on appeal to consider "scientific studies that were not before a lower court judge to further our understanding of the social science underlying a legal ruling" in conducting the Daubert-Lanigan reliability analysis, Commonwealth v. Camblin, 478 Mass. 469, 479 (2017), the defendant's brief references just two articles, one of which the Commonwealth included in its opposition to the motion in limine, and another that the defendant concedes "endorse[s] the use of actuarial instruments in measuring risk of reoffending." The defendant has not demonstrated that the motion judge abused his discretion in relying on past acceptance of the Static-99R recidivism rates to determine that the ten- and twenty-year rates were sufficiently reliable to be admitted.

Furthermore, even if evidence of the twenty-year rates should have been excluded, its admission does not warrant reversal. An error is not prejudicial where "the error did not influence the jury, or had but very slight effect" (quotation and citation omitted). George, 477 Mass. at 341.

Only Dr. Peretti testified regarding the twenty-year rates, and her testimony was fleeting. The other qualified examiner did not address the twenty-year rates on the witness stand or in her report, and the Commonwealth did not reference them during closing arguments. Moreover, the defendant had ample

10

opportunity at trial to highlight the limitations of the Commonwealth's data.  "A qualified examiner's testimony is, of course, subject to the test of rigorous cross-examination." Commonwealth v. Bradway, 62 Mass. App. Ct. 280, 289 (2004).  On cross-examination, Dr. Peretti conceded that the twenty-year recidivism rates were "extrapolated" and stemmed from relatively new research.  One of the defense experts, Dr. Bard, repeatedly called the twenty-year rates "junk" and testified extensively to the faults of such projections.  "All of these professional doubts about the usefulness of psychiatric predictions [were] called to the attention of the jury"; we are confident that the jury was "able to separate the wheat from the chaff."  Barefoot v. Estelle, 463 U.S. 880, 899 n.7 (1983).

Judgment affirmed.

By the Court (Massing, Sacks & Allen, JJ.[3]),

*Paul Little*

Clerk

Entered:  December 26, 2025.

---

[3] The panelists are listed in order of seniority.