GERARD READY, petitioner.

No. 03-P-527.

Suffolk. October 14, 2004. - March 24, 2005.

Present: GREENBERG, KAPLAN, & TRAINOR, JJ.

*Sex Offender. Evidence,* Sex offender, Competency, Scientific test, Religious beliefs. *Constitutional Law,* Sex offender, Trial by jury.

Discussion of the basic principles governing the admissibility of scientific evidence at a criminal trial. [174-175]

In a hearing on a petition filed by an individual seeking to be discharged from his commitment to a treatment center as a sexually dangerous person, the judge did not abuse his discretion in excluding from evidence the results of a certain scientific test purporting to measure the petitioner's sexual interest in children, where there was adequate support in the record for the judge's determination that the petitioner failed to demonstrate the reliability of the scientific theory underlying the test, either by showing that the theory was generally accepted within the relevant scientific community or through other factors [175-179]; and where the defendant failed to demonstrate that the proffered evidence was relevant to facts at issue in his case [179].

This court declined to consider a claim that a party raised for the first time on appeal and failed to support with the level of appellate argument required by Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). [179-181]

PETITION filed in the Superior Court Department on March 30, 2000.

The case was tried before *Christopher J. Muse*, J.

*Edward E. Eliot*, Committee for Public Counsel Services, for the defendant.

*Mary P. Murray* for the Commonwealth.

GREENBERG, J. The petitioner, Gerard Ready, filed a petition pursuant to G. L. c. 123A, § 9, to be discharged from his commitment to the Massachusetts Treatment Center (treatment center) as a sexually dangerous person. On February 26, 2002, a

jury in the Superior Court found that Ready was a sexually dangerous person, as defined in G. L. c. 123A, § 1. On appeal, Ready alleges error in (1) the exclusion of the results of the Abel Assessment for Sexual Interest test; and (2) the denial of his request to waive a jury trial.

1. *Facts.* We summarize the facts of this case as the jury could have found them. Ready, forty-eight years old at the time of his trial, has an admitted history of pedophilia. In 1977, on his guilty plea, he was convicted of two counts of unnatural rape of a child under the age of sixteen and two counts of indecent assault and battery on a child under the age of fourteen. He received suspended jail sentences with probation conditions that he attend weekly treatment sessions for five years. At the same time, he was ordered committed to the treatment center, but the commitment was suspended to run concurrent with his probationary sentences on the criminal matters.

In 1983, Ready was again indicted, this time for sexual assaults on five boys, ages six to eight years, including his seven year old son. As a result, he was convicted of three counts of rape of a child under the age of sixteen and two counts of indecent assault and battery. The Commonwealth revoked his probation, reinstated his civil commitment arising from the 1977 convictions, and ordered him committed to the treatment center.

During his nineteen years of confinement at the treatment center, he admitted committing many other sexual offenses against children. His various estimates ranged from five to possibly one hundred victims encompassing up to 1,000 sexual assaults. Some of these offenses took place while he was on probation and participating in outpatient sex offender treatment.

In November, 1994, treatment center staff discovered a cache of erotic letters that Ready and a friend had written from the treatment center. In these letters, Ready expressed his sexual desire for boys. The letters also describe efforts to convince treatment center staff that he is no longer a risk to young males and allude to his continuing efforts to acquire salacious materials for his reading pleasure.

2. *Exclusion of the Abel Assessment for Sexual Interest (AASI) test.* To the evidentiary picture from which the jury could have

found the above facts, Ready sought to add the results of his AASI test. The Commonwealth filed a motion in limine to prevent the introduction of any evidence regarding the AASI test. Following a three-day *Lanigan*[1] hearing on the admissibility of the AASI test, the judge ruled that the results of the AASI test would not be admissible, finding problems both with the test's scientific validity and its relevance to this case. Ready argues that the trial judge erred by excluding the favorable results of certain aspects of the test from evidence.

The AASI test is a multipart assessment device, the purpose of which is to assess a subject's relative sexual interest in people of different ages and genders. It was developed by Dr. Gene Abel, one of three expert witnesses retained by Ready. The portion of the AASI test that we are concerned with for purposes of this appeal[2] seeks to assess sexual interest through the theory of visual reaction time (VRT), which assumes that a calculable connection exists between the length of time a subject views a stimulus and the subject's sexual interest in that stimulus. The main part of this assessment involves measuring the subject's VRT as he watches slide photographs of children, adolescents, and adults. The subject is told to report his sexual interest in these photographs as he advances through the slide tray, but he is not told that his viewing time for each photograph is also being recorded. In addition to the slide-viewing portion of the test, the subject also completes a questionnaire which inquires about his sexual interests and asks other personality questions.

When the subject completes the test, his questionnaire and the computer tracking of his viewing times are sent to Abel Screening, Inc., the company Abel founded to market and service the test. Using a proprietary formula, Abel Screening, Inc., then generates results of the test and returns them to the person who administered the test. The results contain a summary of the answers on the questionnaire, which are to be used by the person administering the test partly to identify whether

---

[1] *Commonwealth* v. *Lanigan*, 419 Mass. 19 (1994).

[2] The second part of the test consists of so-called probability values aimed at measuring the likelihood that the subject matches the characteristics of offenders who molest children or who attempt to conceal that they have molested children. Ready concedes that this second part of the test was properly excluded from evidence.

the subject was trying to present himself in an overly positive light. The results also contain a bar graph with bars representing the relative VRT for each category of pictures compared to the VRT per picture. The subject's VRT for photographs of children versus photographs of age-appropriate stimuli is used to indicate whether the subject has a sexual interest in children.

We briefly review the basic principles for determining when scientific evidence is valid enough to admit. "In *Commonwealth* v. *Fatalo*, 346 Mass. 266, 268 (1963), [the Supreme Judicial Court] adopted the 'general acceptance' test of *Frye* v. *United States*, 293 F. 1013, 1014 (D.C. Cir. 1923), which required that courts consider 'whether the community of scientists involved generally accepts the theory or process' underlying the evidence to be introduced. Subsequently, in *Commonwealth* v. *Lanigan*, 419 Mass. 15, 26 (1994), [the Supreme Judicial Court] also adopted, in part, the reasoning of *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and held that 'a proponent of scientific opinion evidence may demonstrate the reliability or validity of the underlying scientific theory or process by some other means, that is, without establishing general acceptance,' because the touchstone of admissibility is reliability, and not necessarily general acceptance within the scientific community. *Lanigan*, *supra* at 24, 26, and cases cited. [The court] also stated that, '[w]e suspect that general acceptance in the relevant scientific community will continue to be the significant, and often the only, issue.' *Id.* at 26. Thus, a party seeking to introduce scientific evidence may lay a foundation either by showing that the underlying scientific theory is generally accepted within the relevant scientific community, or by showing that the theory is reliable or valid through other means. See *id.*[3]" *Commonwealth* v. *Sands*, 424 Mass. 184, 185-186 (1997). The standard of review for a judge's determina-

[3]In the event that the scientific evidence fails to meet with "general acceptance" in the relevant scientific community, the *Daubert* court suggested a nonexclusive factor test to assist trial judges in determining whether expert testimony based on "scientific knowledge" may still be admissible: (1) whether the theory or technique has been, or can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) its known or potential rate of error; and (4) whether the theory or technique has

tion of admissibility is abuse of discretion. *Canavan's Case*, 432 Mass. 304, 312 (2000).

Applying these evidentiary standards, the judge ruled that Ready "has not proffered any credible evidence of the AASI's acceptance in the scientific community," and that he failed to demonstrate the test's reliability through the alternative factors suggested by the *Daubert* court. The judge's findings were adopted almost verbatim from among the Commonwealth's proposed findings, a practice that we have discouraged. See *Cormier* v. *Carty*, 381 Mass. 234, 236-237 (1980). See, e.g., *Lewis* v. *Emerson*, 391 Mass. 517, 524 (1984). In such circumstances, the abuse of discretion standard is not displaced, but "the greater the extent to which the court's eventual decision reflects no independent work on its part, the more careful we are obliged to be in our review." *Cormier* v. *Carty*, 381 Mass. at 237. Therefore, we have closely examined the record.

We find adequate support in the record for the judge's decision and conclude that there was no abuse of discretion.[4] We need not recite all of the judge's thirty-three page findings of fact and rulings of law; instead we summarize only those portions of the findings and ruling that are relevant to our discussion. The evidence supports the decision to exclude Ready's AASI test results under either the "general acceptance by the relevant scientific community" test or the more generalized reliability inquiry guided by the factors suggested by the *Daubert* court.

a. *General acceptance.* We begin with "general acceptance in the relevant scientific community" because of its role in either type of reliability inquiry. We agree with the judge's determination that the acceptance of the AASI test by the relevant scientific community has not been established. Ready identifies the applicable scientific community as "those psychologists and psychiatrists who treat and evaluate sex offenders." He provides outlines of the careers of his three witnesses, Drs. Abel, Schwartz, and

generally been accepted in the scientific community. *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 593-594.

[4]We also note that the transcript of the three-day *Daubert/Lanigan* hearing reveals that the judge was actively engaged in the hearing and repeatedly made efforts to seek clarification and further explanation from witnesses in order to gain a thorough understanding of the AASI test.

Ball, and argues that qualified members of the profession use and believe in the AASI test. Ready also stresses that the test has been used 34,000 times at 300 sites, but does not rebut the judge's findings that it has been used mostly "in outpatient treatment programs, a small number of departments of correction, and a small number of probation departments," and that these entities use the AASI test in a different manner from that in which Ready seeks to use it.

The judge found unpersuasive Ready's argument that because the Association for the Treatment of Sexual Abusers (ATSA) endorsed the use of the AASI test in its Practice Standards and Guidelines, the test is generally accepted by the sex offender treatment community. As the judge noted, the ATSA Practice Standards and Guidelines do not specifically endorse or mention by name the AASI test. Furthermore, there was evidence indicating that attempts by certain members of ATSA to amend the Practice Standards and Guidelines to endorse the AASI test were motivated by the desire to facilitate getting the test results admitted in this very case.

In any event, the record supports the judge's determination that "general acceptance" alone does not warrant admission or contribute greatly to the four-factor *Daubert* analysis of reliability. The record similarly supports the judge's conclusion that Ready failed to demonstrate the reliability of the AASI test through the remaining three *Daubert* factors.

b. *Testing and peer review.* The judge concluded that the AASI test has been tested and that some of this testing has been subjected to peer review and publication, but that such testing has been limited in scope and substance. The statistical validity of the testing depends on the accuracy of the assumption that relatively large groups of adults, similar in age and background to Ready, were exposed to the same or similar visual materials and questionnaires. The judge found problems with respect to the largest study of the AASI test, Abel's unpublished study of 1,736 subjects. This study was based on data sent to Abel Screening, Inc., from various professionals who used the test. The record contains no explanation as to how the 1,736 persons were selected from among the larger pool of subjects who had taken the AASI test. Further, there was no evidence indicating

that the study itself had been rigorously examined (for instance, through the process of peer review) and nothing to show "the significance of a subject viewing slides of children for one-third as long as [the study subject] viewed slides of adults" — the "fail" score that Abel derived from the study.

In a study published in a peer-reviewed journal by Abel in 1998,[5] he compared fifty-six participants who took his test and a penile plethysmograph test.[6] The judge found serious deficiencies in that study that are borne out by the record. Only ninety-eight of the slide stimuli in this study were among the 160 stimuli presently used in the AASI test. The study did not include the use of a questionnaire, which is presently part of the AASI test, and which was administered to Ready when he took the test. It also did not include any so-called "normals," those who had not admitted to committing a sexual offense.

Ready also introduced evidence of six independent studies that tested the AASI test. We need not dwell in detail on these studies. We note that, of these six, at the time of trial, two were published in peer-reviewed journals, one had been accepted for publication in a peer-reviewed journal, and one was published in what appears to be a reference book. The two unpublished studies were presented at conferences, but there is no evidence adduced as to the response they garnered, if any, nor the type of review needed to present at the conferences. Of the six studies, four were generally positive but mentioned areas of concern or areas in need of more research. In addition, two of the published articles were not generally favorable, the authors concluding that the AASI test is a "promising instrument based on an interesting concept," but questioning the statistical meaningfulness of the results and noting that the test results were questionable when applied to adolescents.[7] Additionally, of the six independent studies, only one actually calculated VRT scores

---

[5] Abel, Huffman, Warberg, & Holland, Visual Reaction Time and Plethysmography as Measures of Sexual Interest in Child Molesters, 10 Sexual Abuse: A Journal of Research and Treatment 81 (1998).

[6] Penile plethysmography is a technique that records variations in the circumference of the penis as the study subject is exposed to various visual stimuli and graphically records his tumescence during the test procedure.

[7] Fischer & Smith, Statistical Adequacy of the Abel Assessment for Interest in Paraphilias, 11 Sexual Abuse: A Journal of Research and Treatment 195

independently[8]; the others relied on Abel Screening, Inc., to do so and were not provided with the formula for calculating the bar graphs of VRT scores.

Finally, there are at least two other serious flaws regarding studies of the AASI test. The questionnaire, which is part of the test, has not been tested in any of the studies. Also, the AASI test has not been tested for susceptibility to manipulation. A subject who understands that the test is measuring viewing time rather than self-assessment could manipulate the results of the test by altering his viewing times. The record in this case indicates that Ready had taken the AASI test at least once before taking the test in question here.

c. *Error rate*. The judge also found the error rate of the AASI test, ranging from twenty-one percent to thirty-two percent in the studies introduced, to be unacceptable. This range of error rates reflects the percent of child molesters who do not register as having a sexual interest in children when the "fail" score on the test is set at viewing pictures of children for one-third as long as pictures of adults. This is significant because the AASI test has *only* been studied using this "fail" score.

Ready argues, however, that because the score he received on the AASI test was so low, the error rate as applied to his score is also very low. He bases this argument on Abel's testimony that if the "fail" score were reduced to a much smaller fraction of time, then the percentage of false negatives (molesters not identified as having a sexual interest in children) would be extremely low. Abel testified that to achieve this low rate of false negatives, it is necessary to increase the number of false positives, that is, nonmolesters who are identified as having a sexual interest in children. In his testimony, Abel discussed "fail" scores of three percent, a level at which the test would supposedly correctly identify ninety-eight percent of child

(1999). Smith & Fischer, Assessment of Juvenile Sexual Offenders: Reliability and Validity of the Abel Assessment for Interest in Paraphilias, 11 Sexual Abuse: A Journal of Research and Treatment 207 (1999).

[8]Letourneau, A Comparison of Objective Measures of Sexual Arousal and Interest: Visual Reaction Time and Penile Plethysmography, 14 Sexual Abuse: A Journal of Research and Treatment 207 (2002). At the time of the trial, this study had been accepted for publication; it has since been published.

molesters, but also incorrectly identify ninety-four percent of nonmolesters as sexually interested in children.

There are significant problems with this theory. First, there has been no independent testing or peer review of the AASI test at this hypothetical "accurate" level. The only support for the theory is Abel's unpublished study, of which we know nothing about the numbers or types of subjects receiving scores in this low end and, therefore, nothing about its statistical reliability. Second, we agree with the judge's conclusion that gaining high sensitivity to molesters simply by incorrectly categorizing almost every nonmolester as sexually interested in children militates against the scientific rectitude of the test.

As a result of our review of the record, we conclude that the judge did not abuse his discretion in determining that Ready did not demonstrate the reliability of the AASI test either through the "general acceptance" test or the multi-factor inquiry.

d. *Relevance.* In addition to proving the scientific validity of the AASI test, Ready must also show that the test is relevant to his case. To be relevant, the expert's testimony should "assist the trier of fact to understand the evidence or determine a fact in issue." *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 591. The question becomes whether the proffered evidence "can be applied to the facts in issue." *Ibid.*

The judge found that the AASI test has no relevance to Ready's case. First, there is no evidence indicating that the AASI test predicts the likelihood that a subject will reoffend. It is a "snapshot" in time; therefore, it does not predict a subject's future sexual impulses. In addition, the test does not include pictures of six to eight year old boys, the age group Ready abused the most, and thus the test is defective as a tool to assess Ready's sexual dangerousness. There was no abuse of discretion in the judge's findings as to relevance.

3. *Right to waive jury trial.* Just prior to the start to the trial, Ready informed the judge that he wanted to waive a trial by jury. The Commonwealth did not consent to the waiver, relying on the provisions of G. L. c. 123A, § 9. The judge refused to permit the trial to go forward without a jury. Ready argues that to "force [him] to have a jury trial was fundamentally unfair." We need not discuss Ready's arguments at length.

The equal protection claim, based on the Commonwealth having a statutory right to a jury trial in a G. L. c. 123A, § 9,[9] discharge hearing, but not in the initial sexually dangerous person commitment petition under G. L. c. 123A, § 14(*a*),[10] is raised for the first time on appeal, and we are not inclined to consider it. See *Dutil, petitioner*, 437 Mass. 9, 21-22 (2002). Moreover, the argument, which is contained in a few sentences, is presented in conclusory form without any record or applicable legal citation. Consequently, the claim does not rise to the level of appellate argument as required by Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), and is deemed to be waived. *Commonwealth* v. *Bowler*, 407 Mass. 304, 310 (1990).

To overcome the express language of G. L. c. 123A, § 9, Ready asks this court to create a constitutional right to a jury trial (which he could then waive) in G. L. c. 123A proceedings. The issue has been previously decided by the Supreme Judicial Court. *Commonwealth* v. *Barboza*, 387 Mass. 105, 112-113, cert. denied, 459 U.S. 1020 (1982) (no constitutional right to a jury trial in initial sexually dangerous person commitment proceedings under the Federal Constitution or art. 12 of the Massachusetts Declaration of Rights). *Gagnon, petitioner*, 416 Mass. 775, 778 (1994) (no constitutional right to jury trial in G. L. c. 123A, § 9, petitions for discharge). Ready asks this court to "revisit and overrule *Barboza*." As has been recently stated, "from the very earliest decisions we issued and continuing to this day, we have uniformly and unequivocally held we have no power to alter, overrule or decline to follow the holding of cases the Supreme Judicial Court has decided." *Commonwealth* v. *Dube*, 59 Mass. App. Ct. 476, 485 (2003), and cases cited therein.

Finally, Ready has made no showing that the judge abused his discretion by permitting the Commonwealth to make its jury demand after the time set forth in the pretrial scheduling order

---

[9]General Laws c. 123A, § 9, as amended by St. 1993, c. 489, § 7, states in relevant part, "In any hearing held pursuant to the provisions of this section, either the petitioner or the Commonwealth may demand that the issue be tried by a jury."

[10]General Laws c. 123A, § 14(*a*), states in relevant part, "The district attorney . . . may petition the court for a trial which shall be by jury unless affirmatively waived by the person named in the petition."

had elapsed. Courts have traditionally had discretionary power to grant a jury trial to a party that had failed to make a jury trial demand within the prescribed time frame. See, e.g., *Gouzoulas* v. *F.W. Stock & Sons*, 223 Mass. 537, 538 (1916); *Gechijian* v. *Richmond Ins. Co.*, 305 Mass. 132, 143-144 (1940).

*Judgment affirmed.*