NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-660                                          Appeals Court

JUSTO ESTERAZ, petitioner.


No. 15-P-660.

Suffolk.     June 14, 2016. - September 22, 2016.

Present:  Trainor, Vuono, & Blake, JJ.


Sex Offender.  Evidence, Sex offender, Expert opinion,
     Scientific test.  Practice, Civil, Sex offender, Waiver,
     Assistance of counsel.  Waiver.



     Petition filed in the Superior Court Department on December
2, 2010.

     The case was tried before Merita A. Hopkins, J.


     Ethan C. Stiles for the petitioner.
     Melissa A. Juarez for the Commonwealth.


     BLAKE, J.  After a trial in the Superior Court, the jury

returned a verdict finding that the petitioner, Justo Esteraz,

remained a sexually dangerous person (SDP) as defined by G. L.

c. 123A, § 1.  He appeals, arguing that the judge erred by

failing to hold a Daubert/Lanigan hearing to determine the

admissibility of the results of a risk assessment tool known as

the Multisample Age-Stratified Table of Sexual Recidivism Rates (MATS-1), which purports to measure an individual's likelihood to reoffend. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-595 (1993); Commonwealth v. Lanigan, 419 Mass. 15, 24-26 (1994). He also claims that his trial counsel was ineffective in his advocacy for the admission of the same evidence. We affirm, addressing, in our discretion, the question whether the MATS-1 evidence was directly admissible as part of the petitioner's expert's report.

1. Background. The petitioner was civilly committed as an SDP on October 18, 2010. On December 2, 2010, he filed a petition for release and discharge pursuant to G. L. c. 123A, § 9.

At the time of trial, the petitioner was a seventy-four year old man with a significant history of charged and uncharged crimes of sexual abuse spanning over four decades. The petitioner's victims include three generations of young girls in his extended family, including his daughter, nieces, granddaughters, and step-granddaughters. His conduct has included fondling, vaginal and digital penetration, and oral sex. The petitioner's criminal record includes four convictions in 1994 for sex crimes committed in Puerto Rico and four convictions in 2008 in Massachusetts for indecent assault and battery on a child under fourteen years of age.

Pursuant to G. L. c. 123A, § 9, the petitioner was examined by two qualified examiners who prepared reports opining that the petitioner remained an SDP. Those reports explained that, despite the petitioner's advanced age, his extensive and prolonged history of sexual abuse, which continued into his sixties, suggested he was likely to reoffend. The examiners also considered that the petitioner greatly minimized his culpability for his conduct and, at times, suggested his victims were somewhat culpable by offering complicit consent. The examiners also noted the petitioner remained capable of sexual activity, had accomplished only limited progress in sex offender treatment, and his only support in the community is his daughter, who is the mother of three of his victims, and it is unclear what, if any, contact the petitioner would have with them.

The petitioner was also examined by his own independent expert, Dr. Leonard Bard, who concluded that the petitioner was no longer an SDP. That opinion was based, in part, on the use of two risk assessment tools that measure an individual's likelihood to reoffend: the MATS-1 and the STATIC-99R. Dr. Bard's application of those tools, respectively, predicted the petitioner had a 2.5 percent, and 2.8 percent, chance of sexually reoffending. Upon receipt of Dr. Bard's report, the Commonwealth filed a motion in limine to exclude all references

to the MATS-1 evidence on the ground that it was unreliable and inadmissible under the Daubert/Lanigan standard.  The petitioner filed an opposition to the Commonwealth's motion, arguing for the admissibility of the MATS-1 evidence.  The petitioner did not, however, request a Daubert/Lanigan hearing.

On the second day of trial, the judge heard oral argument on the Commonwealth's motion.  The petitioner's counsel stated that he "had discussed for the purposes of judicial economy . . . not hav[ing] [his expert] testify with regard to the MATS-1, because there is also a STATIC-99 score . . . that was substantially the same," and "[his] theory of the case [did not] rest on MATS-1 or STATIC-99."  He nevertheless renewed his argument that the MATS-1 evidence was directly admissible as part of the expert's report under G. L. c. 123A, or, if the judge disagreed, that the MATS-1 evidence met the standards for admissibility under Daubert/Lanigan.[1]  The judge concluded that a Daubert/Lanigan hearing was required to determine if the MATS-1 evidence was admissible, but declined to schedule one where the petitioner had failed to timely request such a hearing before

---

[1] It appears from the transcript that the parties had agreed to stipulate to the exclusion of the MATS-1 evidence on the first day of trial.  One day later, apparently at the insistence of a Committee for Public Counsel Services attorney present at the trial, the petitioner changed course and argued the substance of his opposition to the motion in limine.

the trial had commenced.  She accordingly allowed the Commonwealth's motion to exclude the MATS-1 evidence.

2.  <u>Waiver</u>.  In his appellate brief, the petitioner argues that the judge should have held a <u>Daubert</u>/<u>Lanigan</u> hearing, and that, if such a hearing had been held, the MATS-1 evidence would have been admitted.  In passing, the petitioner also claims that "[t]he trial judge erred in excluding the MATS-1."  In response to a question at oral argument, appellate counsel clarified that he is, indeed, arguing in the alternative that the risk assessment evidence is directly admissible, without the need for a <u>Daubert</u>/<u>Lanigan</u> hearing.  Because that argument was not sufficiently raised in the appellant's brief, it is waived.[2]  See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); <u>Warner-Lambert Co</u>. v. <u>Execuquest Corp</u>., 427 Mass. 46, 50 n.7 (1998); <u>Larson</u> v. <u>Larson</u>, 30 Mass. App. Ct. 418, 428 (1991).  Nevertheless, in the exercise of our discretion, we comment on the direct admissibility of MATS-1 evidence, as the issue is likely to recur.

3.  <u>Direct admissibility of MATS-1 evidence</u>.  General Laws c. 123A, § 9, provides that, following the filing of a petition

_____

[2] Even if the argument was not waived, we would find no substantial risk of a miscarriage of justice.  See <u>Commonwealth</u> v. <u>Fay</u>, 467 Mass. 574, 583 n.9, cert. denied, 135 S. Ct. 150 (2014).  But see <u>McHoul, petitioner</u>, 445 Mass. 143, 156-157 (2005).

for release from confinement, "[t]he court shall order the petitioner to be examined by two qualified examiners, who shall conduct examinations, including personal interviews, of the person on whose behalf such petition is filed and file with the court written reports of their examinations and diagnoses, and their recommendations for the disposition of such person." G. L. c. 123A, § 9, inserted by St. 1993, c. 489, § 7. Thereafter, at a G. L. c. 123A, § 9, trial, "[s]aid reports shall be admissible." Ibid.

In Commonwealth v. Bradway, 62 Mass. App. Ct. 280, 284-289 (2004), this court interpreted comparable language in G. L. c. 123A, § 14(c), to mean that the Legislature had expressly overruled evidentiary requirements that would have otherwise made the clinical evaluations, reports, and testimony of qualified examiners subject to the requirements Daubert/Lanigan.[3] In Santos, petitioner, 461 Mass. 565, 572-573 (2012), the Supreme Judicial Court interpreted G. L. c. 123A, § 9, to likewise allow petitioners to admit the reports of their own experts at trial.

A few years later, in Gammell, petitioner, 86 Mass. App. Ct. 8 (2014), this court was presented with the question of

---

[3] The Supreme Judicial Court has explained that the evidentiary provisions of G. L. c. 123A, §§ 9 and 14, are to be construed in the same manner. See McHoul, petitioner, 445 Mass. 143, 149 (2005); Santos, petitioner, 461 Mass. 565, 571 (2012).

whether penile plethysmograph (PPG) assessment evidence appearing in an expert's report was directly admissible under Bradway and Santos absent a Daubert/Lanigan hearing.  The court held that, because PPG evidence was neither "expressly made admissible by statute, nor . . . an essential part of the qualified examiners' evaluation as set out in the statute," it was not admissible without further evaluation.  Id. at 15.  In reaching that opinion, the court relied on language from Commonwealth v. Markvart, 437 Mass. 331 (2002).  That case provides that "[q]ualified examiners, as expert witnesses, may base their opinions on (1) facts personally observed; (2) evidence already in the records or which the parties represent will be admitted during the course of the proceedings . . .; and (3) facts or data not in evidence if the facts or data are independently admissible and are a permissible basis for an expert to consider in formulating an opinion."  Id. at 337 (quotation omitted) (holding that police reports and witness statements from nol prossed criminal complaints, while not directly admissible under the statute, may be used to the form the basis of a qualified examiner's opinion).  See Ready, petitioner, 63 Mass. App. Ct. 171, 173-179 (2005) (affirming trial judge's exclusion of the Abel Assessment for Sexual Interest test on Daubert/Lanigan grounds based on judge's finding that the test was neither generally accepted in the

relevant scientific community nor a reliable measure of sexual interest).

The assessment device at issue here, the MATS-1, is an adjusted actuarial tool that estimates the probability that an individual will sexually reoffend.  Dr. Bard's report provides that such risk assessment devices "involve[] the use of one or more empirically validated actuarial tools and the use of dynamic factors (empirically validated by numerous independent researchers) to account for variables that an actuarial tool cannot assess or that are considered changeable over time."[4]  In other words, the MATS-1 tool is a product of scientific research, testing, and validation that is available for use by

---

[4] One law review article on the subject explains that risk assessment "actuarial scales are developed using statistical analyses of groups of individuals (in the present case, released sex offenders) with known outcomes during a 'follow-up' period (either arrested for or convicted of a new sexual offense, or not identified as having committed a new sexual offense).  These analyses tell us which items ('predictor variables') do the best job of differentiating between those who reoffended and those who did not reoffend within a specified time period.  Since some of these variables inevitably do a better job than others, these analyses also help us to determine how much weight should be assigned to each item.  The variables are then combined to form a scale, which is tested on many other groups of offenders (cross-validation).  When the scale has been used on many samples with a sufficiently large number of offenders, the scores derived from the scale may be expressed as estimates of the probability that individuals with that score will reoffend within a specified time frame."  Janus & Prentky, Forensic Use of Actuarial Risk Assessment with Sex Offenders:  Accuracy, Admissibility and Accountability, 40 Am. Crim. L. Rev. 1443, 1454 (2003).

individuals treating or examining sexual offenders. While aiding an expert or qualified examiner in reaching a recommendation, the tool, itself, is derived from facts and data that are outside of the examiner's personal observations of the petitioner or the record. Thus, like the assessment test at issue in Gammell, MATS-1 evidence is "not expressly made admissible by statute, nor [is it] an essential part of the qualified examiners' evaluation as set out in the statute." Gammell, petitioner, supra at 15. Rather, to be admissible at a petitioner's trial, the MATS-1 evidence must undergo an assessment under the standards of Daubert/Lanigan to determine whether it is independently admissible. See ibid.[5]

4. Failure to hold a Daubert/Lanigan hearing. The judge did not commit error by failing to hold, sua sponte, a Daubert/Lanigan hearing on the day that Dr. Bard was scheduled to testify. The petitioner neither requested a Daubert/Lanigan hearing, nor indicated that he was either interested in or prepared to participate in such a hearing. To the contrary, the

---

[5] The reliability and admissibility of evidence based on scientific, technical, or specialized knowledge is ultimately for the court to decide. As the Supreme Judicial Court has observed, although the "Legislature doubtless has the power to prescribe the rules of evidence and the methods of proof to be employed in trials in court[,] [] the power to do so does not mean that the reliability of every type of evidence the Legislature may deem admissible, particularly in a criminal case, is automatically insulated from challenge and review on reliability grounds." Commonwealth v. Camblin, 471 Mass. 639, 648 (2015) (quotation and citation omitted).

petitioner's counsel advised the judge that the theory of the case that he had planned did not rest on the MATS-1 or STATIC-99 evidence. The failure to request a Daubert/Lanigan hearing to establish the reliability of expert testimony constitutes waiver of the issue. See Commonwealth v. Fritz, 472 Mass. 341, 349 (2015); Commonwealth v. Cole, 473 Mass. 317, 328 (2015). Moreover, judges are afforded substantial latitude in pretrial and trial management. See Mazzoleni v. Cotton, 33 Mass. App. Ct. 147, 150-151 (1992), and cases cited. See also Mass. G. Evid. § 702 note (2016).

5. Ineffective assistance of counsel. Equally unavailing is the petitioner's claim that his trial counsel was ineffective in his advocacy for the admission of the MATS-1 evidence. Even if trial counsel were ineffective, the petitioner cannot show that he was prejudiced by counsel's actions. See Commonwealth v. Saferian, 366 Mass. 89, 96 (1974) (any ineffectiveness must have "likely deprived the [petitioner] of an otherwise available, substantial ground of defence"). While the petitioner was not able to present the MATS-1 evidence, he was able to present the STATIC-99R evidence, which had a similar probative value, to the jury. The STATIC-99R measured the petitioner's risk of sexually reoffending within a fraction of a percent of the MATS-1 measurement. The failure to present certain evidence does not deprive a petitioner of a substantial

ground of defense where trial counsel is able to develop the issue with other comparable evidence.  See Commonwealth v. Mello, 420 Mass. 375, 394 (1995).

Judgment affirmed.