NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-867

THE SHORELINE CORPORATION & another[1]

vs.

BENJAMIN PEÑA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On appeal from a summary process eviction, the tenant Benjamin Peña argues that the judge erred in concluding, based in part on the testimony of the building's maintenance supervisor, that the eviction was justified by the tenant's overuse of hot water.  The tenant further argues that the judge should have allowed his posttrial motions for reconsideration of the judgment because of the tenant's cognitive disability, for the landlord's failure to provide a reasonable accommodation, and for a psychological evaluation and appointment of a guardian ad litem.  We affirm.

Background.  With the assistance of Federal housing subsidies, the tenant rents an apartment in Lawrence (apartment)

_____

[1] Valebrook Associates.

that is owned and managed by plaintiffs The Shoreline Corporation and Valebrook Associates (collectively, the landlord).  In January 2018, with the assistance of a housing specialist, the tenant and the landlord entered into an agreement under which the tenant agreed not to run the hot water in his apartment "for more than ten (10) minutes at a time."  After a Housing Court judge approved this agreement, it became a legally binding court order.

In February 2021, the landlord served the tenant with a notice to quit alleging, "you have been repeatedly and excessively running the hot water in your apartment which has created a large amount of moisture and condensation to form on your windows and walls . . . and it has caused issues with the heating loop resulting in inconsistent heating temperatures for the building."  A Housing Court judge entered a preliminary injunction that, among other things, ordered the tenant to "utilize the water in his apartment in a reasonable manner," including not running water without a specific purpose or using hot water for longer than twenty minutes.  The judge also ordered the matter referred to the Tenancy Preservation Program (TPP) "[t]o assess and make an opinion on [the tenant]'s . . . mental capacity" and "whether the court should appoint a

2

guardian ad litem for [the tenant]."[2]  In March 2021, the landlord served the tenant with a summary process complaint alleging that the tenant had violated the lease and interfered with the "health, safety and welfare of other residents," and reiterating the factual allegations in the notice to quit.

On July 1, 2021, which had been scheduled as a trial date, the tenant moved to continue the trial; his counsel expressed concerns about the tenant's "mental health" and asked for "an opportunity to have him evaluated by a medical professional." The judge continued the trial to allow the tenant to file a reasonable accommodation request.

In August 2021, the tenant filed a motion for reasonable accommodation, arguing that he needed to take hot water baths to ease his frequent pain from his "numerous physical disabilities, including diabetes, osteoporosis, and arthritis."  The tenant's counsel informed the judge that she had previously understood that the tenant needed a "reasonable accommodation related, potentially, to [his] mental capacity," but after she "received

---

[2] A "'cooperative effort' between the Housing Court and private nonprofit agencies," TPP is intended to assist tenants suffering from mental illness (citation omitted).  Boston Hous. Auth. v. Bridgewaters, 452 Mass. 833, 845 (2009).  TPP investigates "whether a tenancy can be preserved through reasonable accommodations for a tenant's disability."  Adjartey v. Central Div. of the Hous. Court Dep't, 481 Mass. 830, 847 n.23 (2019).

more information . . . the direction changed."  The judge denied the motion for reasonable accommodation.

Based on the evidence at the September 22, 2021 trial, the judge found as follows.  As a result of frequent complaints from other residents about the lack of hot water, the landlord's maintenance supervisor checked the building's hot water tanks and found that the volume of the hot water was low and was falling quickly.  On several occasions including January 20, 29, and 31, 2021, the maintenance supervisor went to the apartment, where the tenant was running hot water from all of the faucets.  The tenant's excess water usage caused condensation resulting in water dripping from the ceiling of the apartment below, buildup of about two inches of ice on the apartment's windows, and lack of hot water for other residents.  To adjust for the tenant's excessive use of hot water, the maintenance supervisor had to raise the water temperature for the building, creating a risk of scalding water for residents.  On January 5, 2022, the judge issued a memorandum of decision, concluding that the tenant was in material noncompliance with his lease.

On January 18, 2022, the tenant moved pursuant to Mass. R. Civ. P. 59, 365 Mass. 827 (1974), and Mass. R. Civ. P. 60, 365 Mass. 828 (1974), for the Housing Court to reconsider and amend the judgment, arguing that the judge had not fully considered the tenant's "physical and mental disabilities."  The tenant

supported the motion with an affidavit from a homemaker who assisted the tenant in his apartment four days each week; the affidavit described the tenant's physical symptoms and "trouble facing reality with things that make him stressed."[3]  The tenant argued that the affidavit supported an inference that he "may be suffering from some undiagnosed capacity issue or mental disability," which warranted reconsideration of the judgment and exploration of possible reasonable accommodations.  The tenant also moved for a psychological evaluation and appointment of a guardian ad litem.[4]  The judge denied the motions, and the tenant appealed.

Discussion.  1.  Maintenance supervisor's testimony.  The tenant contends that the judge erred in allowing the landlord's maintenance supervisor to testify as an expert about how the tenant's use of hot water affected the water temperature in the building.  At trial, the tenant objected to the maintenance supervisor's testimony that, as a result of complaints from other residents about the lack of hot water, the maintenance supervisor checked the building's three hot water tanks every hour and found that the tanks were "draining" because they were

---

[3] We note that the affidavit was not signed under the pains and penalties of perjury.
[4] The tenant subsequently submitted a report of a psychologist that described and diagnosed certain cognitive impairments of the tenant.  We have reviewed that report, which is impounded.

"overworking."  The judge ruled that, to the extent the testimony included expert opinion, he would allow it.

We review the admission of expert testimony for an abuse of discretion.  See Commonwealth v. Davis, 487 Mass. 448, 455 (2021).  To qualify as an expert, a witness must have "sufficient 'education, training, experience and familiarity' with the subject matter of the testimony" (citation omitted).  Commonwealth v. Rintala, 488 Mass. 421, 425 (2021).  See Mass. G. Evid. § 702 (2023).  Additionally, expert testimony must "rest[] on a reliable foundation."  Commonwealth v. Hinds, 487 Mass. 212, 217-218 (2021), quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993).

We discern no abuse of discretion.  Most of the maintenance supervisor's testimony related facts that he perceived directly: the other residents' complaints, the dropping levels in the hot water tanks, the faucets running hot water in the tenant's apartment, and the conditions in that apartment and the one below.  To the extent that the maintenance supervisor opined as an expert by drawing a causal connection between those facts, the judge was within his discretion to admit that opinion.  At the time of trial, the landlord's maintenance supervisor had worked in his position for almost seven years and checked the boiler systems in the building on a "daily basis."  Based on the maintenance supervisor's experience and familiarity with the

6

boiler system, the judge acted within his discretion in admitting the maintenance supervisor's opinion testimony. See, e.g., Lenehan v. Travers, 288 Mass. 156, 158-159 (1934) (expert qualified based on work experience, even without specialized training or education); Lavin v. Lavin, 24 Mass. App Ct. 929, 931 (1987) (expert qualified based on work experience and familiarity with field).

The tenant also argues, for the first time on appeal, that the methodology underlying the maintenance supervisor's testimony was unreliable. The tenant waived that argument by not raising it before or during trial. See Matter of Esteraz, 90 Mass. App. Ct. 330, 335 (2016) ("The failure to request a Daubert-Lanigan hearing to establish the reliability of expert testimony constitutes waiver of the issue"). See also Daubert, 509 U.S. at 592-595; Commonwealth v. Lanigan, 419 Mass. 15, 24-26 (1994).

2. Sufficiency of evidence. The tenant argues that the judge erred in finding, based on the evidence at the trial, that there was "good cause" for the tenant's eviction from Federally subsidized housing.[5] On review of summary process actions, we

---

[5] To the extent that the tenant argues that the judge's memorandum of decision contained an error of law because it omitted discussion of Federal housing regulations, we are not persuaded. The judge's memorandum of decision did address Federal requirements, even if it did not explicitly cite them. Thus, the tenant misplaces his reliance on RFT & Assocs. v.

7

accept as true the factual findings of the judge, but "scrutinize without deference the legal standard which the judge applied to the facts" (citation omitted).  Cambridge St. Realty, LLC v. Stewart, 481 Mass. 121, 123 (2018).  Based on the evidence set forth above, including the testimony of the maintenance supervisor, the judge had ample basis in the facts to conclude that the tenant had violated the lease.  See 24 C.F.R. § 247.3 (permitting termination of Section 8 tenancy for good cause, including "[m]aterial noncompliance with the rental agreement," which may include "[r]epeated minor violations" of a lease which "[d]isrupt the livability of the project," "[a]dversely affect" other residents' quiet enjoyment of their property, or "[i]nterfere with the management of the project").[6]

   3.  Posttrial motions.  The tenant argues that the judge erred in denying his posttrial motions to revise and reconsider

_____

Smith, 419 N.W.2d 109, 111 (Minn. Ct. App. 1998) ("trial court did not address the fundamental 'good cause' requirement for termination of [a] Section 8 lease").

[6] The tenant argues, apparently for the first time on appeal, that even if there was good cause to evict him, the judge should have applied the "equitable anti-forfeiture doctrine" and considered whether the harm to the tenant from eviction outweighed the harm to the landlord.  Based on the evidence at trial, including the interference with other residents' quiet enjoyment, that argument is unavailing.  The tenant misplaces his reliance on cases where courts have granted equitable relief against forfeiture when a "lessee has failed to pay rent" or has breached a "collateral covenant . . . due to accident or mistake and no harm has resulted to the lessor."  Howard D. Johnson Co. v. Madigan, 361 Mass. 454, 457-458 (1972), quoting Eno Sys. Inc. v. Eno, 311 Mass. 334, 338 (1942).

the judgment of eviction, to require the landlord to provide him with a reasonable accommodation, for appointment of a guardian ad litem, and for a psychological evaluation.[7]  The tenant argues that information he submitted with those motions shows that he has a cognitive disability, and so the judge should have set aside the judgment in order to determine if the tenant was entitled to a reasonable accommodation.

This court reviews denials of motions for reconsideration for an abuse of discretion.  See Blake v. Hometown Am. Communities, Inc., 486 Mass. 268, 278 (2020).  We discern no abuse of discretion in the judge's implicit conclusion that that information proffered by the tenant after trial did not warrant reconsideration of the judgment.  Before trial, the tenant's counsel was aware of his possible cognitive issues, as shown by her comments at the July and August 2021 pretrial hearings. Indeed, in his motion to reconsider, the tenant stated that "awareness of [the tenant]'s disabilities predate[d] the filing of this case."  Thus, what the tenant proffered after trial was not information which "could not by due diligence have been discovered earlier."  Cahaly v. Benistar Prop. Exch. Trust Co., 451 Mass. 343, 361 (2008).  Moreover, neither the homemaker's

---

[7] In the Housing Court, the landlord argued that the tenant's motion to reconsider was not timely under Mass. R. Civ. P. 59. The landlord does not raise that argument on appeal, and so we do not consider it.

affidavit nor the psychological evaluation supports the tenant's position strongly enough to amount to a "substantial reason" justifying relief. Mass. R. Civ. P. 60 (b).

As to the tenant's claim that the judge should have allowed his posttrial motion for a reasonable accommodation, it is without merit. The factors entitling a tenant to a reasonable accommodation include whether (1) the tenant is disabled; (2) there is a nexus between his disability and his conduct; and (3) the requested accommodation is reasonable. See Boston Hous. Auth. v. Bridgewaters, 452 Mass. 833, 843-844, 848-849 (2009). See also Glendale Assocs., LP v. Harris, 97 Mass. App. Ct. 454, 462-464 (2020). We assume, without deciding, that the tenant provided sufficient information with his posttrial motions for the judge to have found that he met the first Bridgewaters prong, and has a cognitive disability. In those circumstances, the tenant cannot show prejudice from the judge's denial of his posttrial motions for a psychological evaluation and appointment of a guardian ad litem, which in any event were in the judge's discretion. See G. L. c. 123, § 19; G. L. c. 185, § 40.

As to the second Bridgewaters prong, the tenant did not demonstrate a nexus between his cognitive disability and his excess hot water use. Based on the evidence at trial, the judge found that the tenant ran hot water "to create a warm and humid environment . . . as well as a topical treatment for his pain."

10

Since the judge found that the tenant's conduct was intentional, to relieve his physical pain, the judge could properly conclude that the tenant's posttrial filings did not show a nexus between that conduct and tenant's asserted cognitive disability.

Nor did the tenant meet the third prong of the Bridgewaters test. Even if there was sufficient evidence to support a nexus between the tenant's cognitive disability and his excess hot water use, the tenant did not demonstrate that a reasonable accommodation was available. Among the submissions before the judge were documents asserting the tenant's claim that shut-off attachments could be installed on the apartment's faucets, as well as those setting forth the landlord's response that those attachments are not compatible with the building's plumbing. We discern no error or abuse of discretion in the judge's denial of the tenant's posttrial motion for a reasonable accommodation.

Judgment and orders denying motions for reconsideration and for psychological evaluation affirmed.

By the Court (Green, C.J., Milkey & Grant, JJ.[8]),

Assistant Clerk

Entered: January 8, 2024.

---

[8] The panelists are listed in order of seniority.

11